GREAT SOUTHERN LIFE INS. CO. *v.* CAMPBELL.[*]

(Division B.  Oct. 17, 1927.)

[114 So. 262.  No. 26553.]

1. INSURANCE. *Death from act of insane person without cause held covered by double indemnity clause of insurance policy, regardless of exemption of death resulting from "homicide."*

    Where an insurance policy, providing for double indemnity in case of accident, provides therein that it will not be liable if death results from homicide, where the killing is the act of an insane person without cause or justification, it is not within the exception, and the company is liable; the word "homicide" being used in the sense of intentional homicide.

2. TRIAL. *If facts are undisputed and only one reasonable inference can be drawn, peremptory instruction is proper.*

    A peremptory instruction is proper, where the facts are undisuted, and only one reasonable inference can be drawn from the facts disclosed.

3. INSURANCE. *"Suicide" in insurance policy is capable of embracing self-destruction, result of sane or insane act.*

    Word "suicide" in insurance policies exempting insurer from liability for death from suicide is capable of embracing self-destruction, result of sane or insane act.

*Corpus Juris-Cyc. References: Accident Insurance, 1CJ, p. 442, n. 10; p. 443, n. 17; Insurance, 32CJ, p. 1152, n. 94, 95; p. 1155, n. 5; p. 1157, n. 13, 14; Life Insurance, 37CJ, p. 553, n. 50; p. 554, n. 57; Trial, 38Cyc, p. 1565, n. 83, 84; p. 1566, n. 86; Insanity as affecting the applicability of "suicide," clause, with the words "sane or insane," in life insurance contract, see annotation in 17 L. R. A. (N. S.) 260; 35 A. L. R. 160; 14 R. C. L. 1232; 3 R. C. L. Supp. 361; 5 R. C. L. Supp. 408; 6 R. C. L. Supp. 869.

APPEAL from circuit court of Lincoln county.

HON. E. J. SIMMONS, Judge.

Action by Mrs. Clara Campbell against the Great Southern Life Insurance Company on a policy. From a judgment for plaintiff, defendant appeals. Affirmed.

*T. Brady, Jr.,* for appellant.

I.  The court erred in deciding that the death of Jesse Campbell was "purely accidental" and not the "result of homicide." Appellant contends under the terms of the policy upon which appellee sued that the killing of a human being by an insane person is homicide and cannot be within the terms of said policy "purely accidental."

It is self-evident that the death of the deceased was a "result of homicide" and was not "purely accidental." The term *homicide* is defined in 4 Words and Phrases, 1st Series, page 3339, as follows:

"Homicide is the killing of a human being. See *Sanders* v. *State,* 38 S. E. 841, 113 Ga. 267; also Code, section 4319; *Daly* v. *Stoddard,* 66 Ga. 145, 146. Homicide is the killing of any reasonable creature. *State* v. *Reed,* 9 N. C. 454, 455. Every killing by one man of another is homicide. *State* v. *People,* (Del.), 33 Atl. 257, 258, 9 Houst. 488." 2 Words and Phrases, 2nd Series, page 908; and cases cited; 29 C. J., page 1049.

It is evident from the language of the contract that it was the intention of the contracting parties that the appellee should not take advantage, in attempting to recover, of insanity. It expressly so stipulates as to suicide caused by insanity and it likewise expressly so stipulates against the appellee's taking advantage of insanity when it provides that there shall not be a recovery in the event of appellee's husband's death, as a "result of homicide."

The contracting parties expressly agreed and stipulated in the contract sued upon that liability should not

arise against appellant in the event the death of the deceased was the. "result of homicide."

The court below by its peremptory instruction has stricken from the contract "result of homicide." Likewise it has misconstrued the words "purely accidental means," as they appear in the contract.

Hugh V. Wall, for appellee.

We contend that the word *homicide* as used in this policy means *intentional homicide.* The word *homicide* as defined by the Mississippi statute and construed by our supreme court is too well understood to burden this court with any lengthy argument. *Homicide* as defined by our statute and as construed by our courts means an *intentional* killing of a human being. There can be no homicide, under the universal holding of our court, without an intention. And it is universally held that an insane person is not capable of forming an intention to kill. The parties to this contract, which is a Mississippi contract, entered into it with the knowledge of the common acceptance of the definition of *homicide,* as defined by Mississippi law, which is, as above stated, the intentional killing of a human being. *Provident Life & Accident Ins. Co.* v. *McWilliams,* 112 So. 483; *Jefferson Standard Life Ins. Co.* v. *Myers* (1926) 284 S. W. 216 (Texas), decide this case in favor of the appellee. There is no difference, as we construe them, in the provisions of the clause in the Texas case, *supra,* and the case at bar.

In *Ins. Co.* v. *Crandal,* 120 U. S. 527, 30 L. Ed. 740, the court held: "When one inflicts injury, he acts. An act involves the exercise of the will; it signifies something done voluntarily. It necessarily implies intention." These statements are abundantly sustained by the textwriters and the decisions of our courts. 1 C. J., page 912; *Chapman* v. *Life Ins. Co.,* 5 Fed. Case No. 2606; *Randal* v. *Birmingham Ry. L. & P. Co.,* 168 Ala. 314, 53 So. 918; *Mut. Life Ins. Co.* v. *Terry,* 82 U. S. (15

Wall.) 580, 21 L. Ed. 236; *Eastabrook* v. *Union Ins. Co.,* 54 Me. 224, 227, 229 (89 Am. Dec. 743).

The court will see that by a decision of the highest court in the land that the word *intentional* is read into the policy, where it contains a suicide clause, and the insurance companies in order to avoid liability have now placed into their policies "suicide, whether sane or insane," and before they can defeat liability in the case at bar, they must put in their policies "homicide, whether caused by a sane or an insane person."

The case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee filed a declaration in the circuit court on an insurance policy on the life of her husband, Jesse Campbell, who, it was alleged, met his death by accident, in that he was shot by one Ab Mitchell, an insane person, and died as a result thereof; that the appellant company had paid one thousand dollars on account of the death of the said Jesse Campbell, under the terms of the said policy, but refused to pay the additional one thousand dollars, for which the appellee made demand, under the terms of the policy. The insurance policy in question contained the following clause, which is relied upon to sustain the action:

"In event of death from accident the company agrees to increase the amount payable hereunder to two thousand dollars ($2,000), upon due proof that the death of the insured occurs during the premium paying period, while this policy is in full force and effect, before any benefit or value under any of the provisions in this policy other than loans shall have been claimed and allowed, or granted automatically, and before the attainment of age sixty by the insured, *provided such death results solely from bodily injuries, caused directly, exclusively and independently of all other causes by external, violent and purely accidental means, and*

*provided also that such death shall have ensued within ninety days from the date of such injuries and shall not be the result of* homicide, nor be caused directly or indirectly by self-destruction while sane or insane, disease or illness of any kind, physical or mental infirmity, any violation of law by the insured, military or naval service of any kind in time of war or by engaging as a passenger or otherwise in submarine or aeronautic expeditions." (Underscoring supplied.)

The appellant filed the general issue to the declaration, and also pleaded that the appellee was not entitled to recover the additional one thousand dollars, under the terms of the policy, since by said policy it was provided that the additional one thousand dollars was not to be paid if the insured met his death as a result of homicide.

The plaintiff introduced proof upon the issue, which proof showed that the slayer of the deceased was insane at the time of the killing, and also introduced proof that there was no bad feeling between the parties prior to the shooting; that Mr. Campbell, the deceased, traded with Ab Mitchell, who ran a small store.

The company offered no proof, but contended that there was no liability, because the proof failed to show that there was no eyewitness to the killing, and failed, therefore, to show that there was an absence of aggression on the part of Campbell concerning the killing.

The proof for the plaintiff, we think, established beyond all reasonable doubt that Mitchell was insane at the time of the killing, and that no other reasonable conclusion could be drawn from the proven facts. We think also that the facts showed with clearness that there was no probable cause for the said killing, and that, consequently, the facts for the plaintiff, being uncontested, must be taken as true, and when so taken are sufficient to establish the fact that Mitchell was insane at the time of the killing, and that he shot the deceased, Campbell, without legal cause.

148 Miss.—12.

The question for decision then turns upon the construction of that part of the above clause, "and shall not be the result of homicide." It is contended by the appellant that the word "homicide," as used in this policy, means the killing of one person by another or through the agency of another, and that it is irrelevant whether the person committed the act was sane or insane; that the killing of a person by an insane person is homicide within the meaning of the intendment of the clause, regardless of his conditions or the circumstances.

It is contended that our statutes define "homicide" under many circumstances, including justifiable homicide and unintentional homicide, and, consequently, the intent or the condition of mind, or its ability to form an intent, is immaterial. This argument is plausible, and, if there was no authority upon the proposition, we might reach a conclusion in harmony with the argument made. It is true that our statutes define homicide and, under some circumstances, make it excusible, justifiable, and make manslaughter of many kinds of killing which do not result from intentional acts; but we find upon investigation that the authorities dealing with the suicide clause generally, if not universally, hold that the clause against suicide is not a defense where the person who kills himself is insane at the time of the commission of the act, unless the policy expressly provides against suicide whether committed by a sane or insane person.

It is familiar learning that insurance policies are to be construed most strongly against the insurer, who usually draws the contract and provides the exceptions contained in the clauses in such policies.

The word "suicide" is capable of embracing self-destruction, the result of a sane or insane act, since the person in either case kills himself or brings his death about by means of a physical act performed by himself.

The appellant is a corporation incorporated under the laws of the state of Texas. The Texas court in a

recent case (*Jefferson Standard Life Insurance Co.* v. *Myers* [Tex. Com. App.] 284 S. W. 216), a suit upon a double indemnity insurance policy for the sum of three thousand dollars, if death resulted from natural causes; if, on the other hand, it was accidental, it was for six thousand dollars, decided in favor of the appellee. The insured came to his death as the direct result of a gunshot wound inflicted by an insane woman, and the court gave judgment for the amount sued for, which included the double indemnity feature. Counsel in that cause undertook to avoid liability for the double indemnity upon the theory that death was due to "bodily injury inflicted by another person;" but the court held, and fortified its holding by numerous authorities, that the liability existed. In the third syllabus, it was held·that:

"Exemption from liability under double indemnity clause for death due to bodily injury 'inflicted' by another person *held* only to extend to intentional injuries to insured, and therefore not to shooting by insane person; 'inflicted' necessarily implying action which involves exercise of will."

In that case the double indemnity clause of the policy read as follows:

"The company will pay the beneficiary in full settlement of all claims hereunder double the face amount of this policy if, during the premium paying period, and before default in the payment of any premium, and before waiver of any premium on account of disability, and before any nonforfeiture provision is in effect, the death of the insured results from bodily injury within ninety days after the occurrence of such injury, provided death results directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means while the insured is sane and sober; except these provisions do not apply if the insured shall engage in military or naval service or any allied branch thereof, in time of war, or in case death results from bodily injury inflicted by another

person or by the insured himself, or from engaging in aeronautic or submarine operations, either as a passenger or otherwise, or from any violation of law by the insured, or from a state of war or insurrection, or self-destruction, whether during the first policy year or afterward.''

At page 218 of 284 S. W., the court quotes from the case of *Accident Insurance Co. of North America* v. *Crandal,* 120 U. S. 527, 7 S. Ct. 685, 30 L. Ed. 740, as follows:

''The single question to be decided, therefore, is whether a policy of insurance against 'bodily injuries, effected through external, accidental and violent means,' and occasioning death or complete disability to do business,·and providing that 'this insurance shall not extend to death or disability which may have been caused wholly or in part by bodily infirmities or disease, or by suicide, or self-inflicted injuries,' covers a death by hanging one's self while insane.

''The decisions upon the effect of a policy of life insurance, which provides that it shall be void if the assured 'shall die by suicide,' or 'shall die by his own hand,' go far towards determining this question. This court, on full consideration of the conflicting authorities upon that subject, has repeatedly and uniformly held that such a provision, not containing the words 'sane or insane,' does not include a self-killing by an insane person, whether his unsoundness of mind is such as to prevent him from understanding the physical nature and consequences of his act, or only such as to prevent him, while foreseeing and premeditating its physical consequences, from understanding its moral nature and aspect. *Life Ins. Co.* v. *Terry,* 82 U. S. (15 Wall.) 580, 21 L. Ed. 236; *Bigelow* v. *Berkshire L. Ins. Co.,* 93 U. S. 284, 23 L. Ed. 918; *Insurance Co.* v. *Rodel,* 95 U. S. 232, 24 L. Ed. 433; *Manhattan L. Ins. Co.* v. *Broughton,* 109 U. S. 121, 3 S. Ct. 99, 27 L. Ed. 878. In the last case, which was one in which the assured hanged himself while

insane, the court, repeating the words used by Mr. Justice NELSON, when Chief Justice of New York, said that 'self-destruction by a fellow being bereft of reason can with no more propriety be ascribed to the act of his own hand than to the deadly instrument that may have been used by him for the purpose,' and 'was no more his act, in the sense of the law, than if he had been impelled by irresistible physical force.' 109 U. S. 132, 3 S. Ct. 105, 27 L. Ed. 882; *Breasted* v. *Farmers' Loan & T. Co.,* 4 Hill, 73. In a like case, Vice Chancellor WOOD (since Lord Chancellor HATHERLEY) observed that the deceased was 'subject to that which is really just as much an accident as if he had fallen from the top of a house.' *Horn* v. *Anglo-Australian Ins. Co.,* 30 L. J. (N. S.) Ch. 511; s. c., 7 Jur. (N. S.) 673. And in another case, Chief Justice APPLETON said that 'the insane suicide no more dies by his own hand than the suicide by mistake or accident,' and that, under such a policy, 'death by the hands of the insured, whether by accident, mistake, or in a fit of insanity, is to be governed by one and the same rule.' *Eastabrook* v. *Union Ins. Co.,* 54 Me. 224, 227, 229, 89 Am. Dec. 743.

"Many of the cases cited for the plaintiff in error are inconsistent with the settled law of this court as shown by the decisions above mentioned.

"In this state of the law, there can be no doubt that the assured did not die 'by suicide,' within the meaning of this policy; and the same reasons are conclusive against holding that he died by 'self-inflicted injuries.' If 'self-killing,' 'suicide,' 'dying by his own hand,' cannot be predicated of an insane person, no more can 'self-inflicted injuries;' for in either case it is not his act."

It appears to us that the words "bodily injuries" in that policy is as clear as the word "homicide" in this policy, and that the true meaning and intention of the policy is that the "homicide" must be the result of the

act of a sane man.   See, also, the authorities cited in this case.

It follows from what we have said that the action of the court below is correct, and the judgment will be affirmed.

*Affirmed.*