Viva Franklin Day *v.* Interstate Life & Accident Company.

(*Knoxville.*   September Term, 1931.)

Opinion filed October 10, 1931.

H. B. MACK and F. C. FRICKS for plaintiff in error.

FINLEY & CAMPBELL for defendant in error.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

The policy upon which this suit is based is an ordinary life policy for $2,500, but provides that in case the insured dies from accidental injuries the insurer will pay the named beneficiary double that amount. The company has paid $2,500, but denies liability on the double indemnity feature of the policy. The trial court sustained a demurrer to the declaration and dismissed the suit.

The declaration alleges that the death of insured occurred in the following manner:

"That he with others were in one of the rooms or departments of the J. W. Bell Milling Company, at Spartanburg, South Carolina. That they were attending their usual duties, and without warning, he and they were attacked by one T. Earl Robertson, who had suddenly become insane, mad or irresponsible, and who with an ax or other sharp instrument did then and there strike, wound, injure and kill four people, including the hus-

band of plaintiff, by hitting them on the head, neck or body, with said ax or other sharp instrument. That the attack was uncalled for, and was unexpected, and without fault on the part of plaintiff's husband, and that said husband died a few minutes afterwards as a direct result of his aforementioned injuries."

The double indemnity provision of the policy contains the following paragraph: "This agreement to pay double the amount insured in event of death as above recited will be of no effect in case of death by homicide or self-destruction, whether sane or insane." The phrase "whether sane or insane" qualifies the word "self-destruction" only, and not the word "homicide."

Assuming that Robertson was insane, which the demurrer admits, we are of the opinion that the company is liable, and the trial court should have permitted the case to be heard upon the merits.

While counsel for the company insist that the word "homicide" be given its broad meaning, viz., the killing of one person by another, the authorities do not so construe it as here used, and such, in our opinion, was not the intention of the parties. The courts generally hold that the word "intentional" must be read into the contract, and the company is exempt from liability only where the homicide was an intentional one.

In 1 Corpus Juris, 443, it is said:

"It seems that the fact that the insured was killed or injured by an insane person does not avoid the policy, since an injury so inflicted cannot be said to be intentional."

As was said in *Great Southern Life Ins. Co.* v. *Campbell,* 148 Miss. 173, 114 So. 262, 56 A. L. R. 681: "The true meaning and intention of the policy is that the 'homicide' must be the result of the act of a sane man."

One must be sane or rational before he can be capable of intentionally committing an act.

It is generally held that where the insured is injured because of mistaken identity the company is liable because the assailant did not intend to injure the insured.

█ Likewise, where there is an exemption in case of suicide, the company is nevertheless liable if insured was insane at the time. To avoid this situation policies are now usually written so as to exclude liability in cases of suicide whether the insured is sane or insane.

The case referred to above in 56 A. L. R., construes the exact clause here involved, and holds that where the insured was killed by an insane person the company is liable under the double indemnity feature. The authorities in support of the principles announced herein will be found in the Mississippi case and the A. L. R. annotation following that opinion.

The case will be reversed and remanded for a hearing upon the merits.