## JOHNSON v. JEFFERSON STANDARD LIFE INS. CO.

### No. 3178.

Circuit Court of Appeals, Fourth Circuit.
Oct. 12, 1931.

Henry Busbee and John F. Williams, both of Aiken, S. C. (Williams, Croft & Busbee, of Aiken, S. C., on the brief), for appellant.

Herbert E. Gyles and P. F. Henderson, both of Aiken, S. C. (Julius C. Smith and Brooks, Parker, Smith & Wharton, all of Greensboro, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

The sole issue in this case is whether the Jefferson Standard Life Insurance Company is liable under the double indemnity clause of a life insurance policy issued on the life of Charles L. Johnson and payable to Laura H. Johnson, his wife, as beneficiary. The double indemnity clause is as follows: "The company will pay the beneficiary in full settlement of all claims hereunder double the face amount of this policy, if during the premium paying period, and before default in the payment of any premium, and before waiver of any premium on account of disability, and before any nonforfeiture provision is in effect, the death of the insured results from bodily injury within ninety days after the occurrence of such injury, provided death results directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means while the insured is sane and sober; except these provisions do not apply if the insured shall engage in military or naval service, or any allied branch thereof, in time of war, or in case death results from bodily injuries inflicted by another person or by the insured himself, or in case of self-destruction at any time whether during the first policy year or afterwards."

The insurance company defends the suit on the grounds: (1) That the death of the insured did not result from bodily injuries effected through accidental means, and (2) that his death resulted from injuries inflicted by another.

Johnson was a police officer of the city of Aiken, S. C. He was shot and killed by a drunken negro whom he was bravely attempting to arrest in the course of his duty on November 1, 1923. On the evening of that day, Johnson and J. E. George, the chief of police, both in police uniform, were standing upon the sidewalk in conversation with an acquaintance. Henry Thomas, the negro, passed by drunk and staggering, with a negro companion, and stared at the officers. One of the negroes entered a store near by, but shortly afterwards they both returned and passed the policemen; Thomas again staring at the chief of police. Thereupon the chief said to Johnson, his subordinate, that Thomas was too drunk to be walking the streets and should be arrested. The three men started after Thomas, the chief of police walking a few steps in advance of the other two. When he approached, the negro called him a vile name, whereupon he caught hold of the negro, who drew a pistol and shot the chief of police in the shoulder. The negro then fired a shot in the direction of one Joe Vernon, a city employee, who stood near by, missing him. Johnson, the insured, then closed in upon the negro who fired a third shot and killed him. The negro then turned upon the chief of police, who shot and killed him.

Johnson had not reached his man when he was shot, but he was obviously bent on arresting an offender armed with a pistol who had just committed a serious crime in his presence.

The uncontradicted evidence on the part of the defendant showed that the negro was a steady worker of average intelligence, employed as a caretaker for a large winter home in Aiken. But he had been suspected of bootlegging, and twice the chief had searched the premises with the assistance of the real estate agent in charge, the last time a few days before the shooting. The negro resented these investigations and had made threats to kill the chief of police, which had been communicated to him.

Medical testimony on the part of the plaintiff showed that a man drunk enough to stagger may or may not be conscious of what he is doing. There was also testimony tending to show that on the occasion in question, the negro was "mean drunk" or "crazy drunk."

At the conclusion of the plaintiff's case the District Judge directed a verdict for the defendant, holding that the killing was not accidental, and also that it resulted from bodily injuries inflicted by another person who knew exactly what he was doing. From this ruling, the plaintiff appealed.

We have recently held in Norris v. New York Life Ins. Co., 49 F. (2d) 62, in the construction of a similar policy, that death does not result from accidental means if the insured is injured in the course of a dangerous act, the risk of which he should have foreseen. Liability under the policy does not arise if the insured voluntarily assumes the risk of that which is likely to result in injury or death. The testimony in the instant case does not require the conclusion that the police officers had reasonable grounds to believe that they were running the risk of injury or death when they approached Thomas to arrest him; but after the chief of police was shot, it was obviously dangerous to undertake to arrest his armed assailant, and there is room for the contention that the deceased knew he was running a grave risk when he courageously advanced to arrest the drunken man. Yet the shots came fast and quick, and it may be that the deceased had hardly time enough to realize the danger of his action before he was shot.

But we need not decide whether the killing was accidental within the meaning of the double indemnity clause of the policy, for the facts recited clearly show that the case falls within the exception in the clause in that the death of the insured resulted from a bodily injury inflicted by another. It is conceded that Johnson was killed by the negro's shot, but it is argued that to come within the exception, the bodily injury must have been inflicted *intentionally* by another, and that in this case the evidence shows that the murderer was so drunk as to be mentally unable to form the criminal design. There is some authority for the rule that under such an exception in a double indemnity clause, the word "intentionally" must be read into the contract. Jefferson Standard L. Ins. Co. v. Myers (Tex. Com. App.) 284 S. W. 216; Great Southern Life Ins. Co. v. Campbell, 148 Miss. 173, 114 So. 262, 56 A. L. R. 683.

Assuming this ruling to be correct, for the purpose of this decision it does not help the policyholder's case. There was no evidence from which the jury might infer that the negro's act was not intentional, in that he was too drunk to know what he was about. There was abundant testimony that he was intoxicated. One of the witnesses referred to him as "crazy drunk" and a physician testified, as we have seen, that a man may be so drunk as to be unconscious of his acts and yet be able to walk about staggering. But, on the other hand, the uncontradicted evidence indicated that Thomas, although doubtless fired to commit the murderous assault by the liquor he had drunk, was in possession of his senses and purposely shot to injure the officers of the law. He was aggrieved that his premises had been searched and had threatened to kill the chief of police. On the occasion of his arrest he complained of being followed, cursed the chief of police, and, being angered by the interference with his liberty when seized, shot to prevent the arrest. He continued to shoot as Johnson came up. It was not a sufficient basis for the plaintiff's case to prove that it is possible for a man to be so drunk as to be unconscious of acts which he is physically able to perform. There must have been in addition some evidence to show that such was the negro's condition on this occasion. But that which was offered was too unsubstantial for this purpose, and had the jury decided on the testimony before them that the negro was not conscious of his acts, it would have been the duty of the District Judge to have set aside the verdict. It was accordingly his duty to direct a verdict for the defendant. Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720.

The judgment of the District Court is affirmed.