## TEXAS LIFE INS. CO. v. PLUNKETT.
### No. 1293.

Court of Civil Appeals of Texas. Eastland.

Sept. 14, 1934.

Rehearing Denied Oct. 19, 1934.

McClellan, Lincoln & Williams, of Waco, and Wheat & Wheat, of Seymour, for appellant.

B. Y. Cummings, of Fort Worth, for appellee.

FUNDERBURK, Justice.

After proof of loss and without contest, $5,000 was paid by Texas Life Insurance Company to Mrs. Verna Plunkett on a life insurance policy because of the death of C. S. Plunkett, her husband, caused by a pistol shot by Temple Dickson. The policy contained a double indemnity provision for the payment of $10,000 if the death of the insured should result from the effects of any injury through external, violent, accidental cause within a stated time, but provided that within the meaning of external, violent, accidental cause there should not be included "death caused by, or resulting from murder, homicide * * * or death which may be voluntarily or intentionally caused by any person in anyway."

This suit was brought to enforce collection of $5,000 under the double indemnity provision, same being the amount remaining after crediting the total amount with the $5,000 previously paid. It was the contention of the plaintiff that Temple Dickson, by whose hand the killing of insured resulted, was at the time insane, and that his insanity, while temporary, was not produced by the voluntary recent use of ardent spirits. In defense the defendant contended that Dickson was sane; that the exception applied even if he was insane; that his insanity, if any, resulted from the recent use of intoxicating liquors; that in any event Jack Norwood was a principal in the transaction and, therefore, the insured's death resulted from a cause within the exceptions to the double indemnity provision. Upon a trial by jury and a verdict for the plaintiff, judgment was rendered accordingly, from which the Insurance Company has appealed.

Under twenty-four assignments of error appellant makes ten distinct independent contentions (designated as "points") that the judgment of the court below, for reasons set forth, should be reversed. We have given due consideration to each point, and have concluded that all but two of them should be overruled. Those overruled may be disposed of with but little discussion.

■ There was no error, we think, in the action of the court in overruling the general demurrer to plaintiff's petition. This conclusion results from a consideration of the provisions of the policy. Appellant, conceding that ordinarily while "'homicide,' as used in the double indemnity provision, means intentional homicide, and excludes homicide committed by an insane person," under the authority of cases cited (Great So. Life Ins. Co. v. Campbell, 148 Miss. 173, 114 So. 262, 56 A. L. R. 681; Day v. Interstate Life & Accident Co., 163 Tenn. 190, 42 S.W.(2d) 208; Jefferson Standard Life Ins. Co. v. Myers (Tex. Com. App.) 284 S. W. 216), contends that the word "homicide" being preceded in the provision in question by the word "murder" requires a different construction, viz., that it is used in a generic sense to include a killing by an insane person. We cannot adopt this view. Such a construction would render wholly useless that part of the provision following the mention of "murder" and "homicide," and reading as follows: "Or, death which may be voluntarily or intentionally caused by any person in anyway." Effect, if possible, should be given to every word in a provision, and this can be done here only by construing the word "homicide" to mean what appellant concedes it ordinarily means in such a connection, viz., an intentional killing.

It cannot be said, we think, as a matter of law that plaintiff did not discharge the burden of showing by the preponderance of the evidence that Temple Dickson was insane when he killed the insured. It will serve no useful purpose to set out the testimony. Suffice it to say that in our opinion the question of sanity or insanity of Dickson was a matter of inference from all the testimony, and not being conclusive either way was properly submitted to the jury.

We are likewise of the opinion that the question of whether Jack Norwood was a principal to the killing was an issue for the jury. The evidence supporting a finding that he was not, was not so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

■ In answer to point 7 to the effect that the court should have submitted an issue calling for a finding of whether Jack Norwood was guilty as a principal by having endeavored at the time of the killing of C. S. Plunkett to secure the safety of Temple Dickson, there are two reasons why the judgment cannot be disturbed. One is, there was no evidence that Jack Norwood endeavored to secure the safety of Temple Dickson. The only evidence relied on to show this was that, being in the car, he drove with Temple Dickson to the home of the latter's father. There was no evidence of any effort whatever to evade arrest. The other reason is there was no request by the appellant for the submission of the issue. The issue was not submitted, and was not requested by the appellant to be submitted. Appellant cannot, therefore, complain of the failure of the court to submit it. R. S. 1925, art. 2190, as amended by Acts 1931, c. 78, § 1 (Vernon's Ann. Civ. St. art. 2190); Panhandle & S. F. Ry. Co. v. Burt (Tex. Civ. App.) 71 S.W.(2d) 390.

■ Point 9 presents the contention that there was reversible error in the action of the court in permitting the attorney for plaintiff to inform the jury how he personally desired that certain special issues be answered. It is the right of a party's counsel to argue to a jury that the issues submitted should be answered in a certain way. There could be no more effective way of informing the jury how the attorney desired the questions to be answered. It would be an extremely hairsplitting rule which would say that an attorney could argue that a jury should answer issues in a certain way, but could not state that he desired them to so answer.

■ Points 8 and 10 we have concluded do present matters which call for a reversal of the judgment. They both involve the argument of plaintiff's counsel. Assignment of error No. 21 quotes certain parts of the argument. Bills of exception show that these several parts of the argument were objected to, among other reasons, because same informed the jury of the result of the trials of Dickson and Norwood, the one at Wichita Falls, and the other at Paducah, for the killing of Plunkett. We do not believe that the argument is subject to the objection made with reference to the trial of Norwood. There was a basis in the testimony for the fact that there had been trials at the two places named, and that Dickson was at the time of the instant trial at Sweetwater, and the whereabouts of Norwood were unknown. It may be regarded, we think, as a very proper, if not necessary, inference from the testimony that both parties were acquitted; but there was no evidence that any defense of the insanity of Dickson was set up in either of the trials, or that the acquittal of either or both defendants was based upon that defense. This information was very adroitly conveyed to the jury by counsel's argument. There was no evidence that the plaintiff Mrs. Verna Plunkett ever contended that Temple Dickson was not insane. There was, therefore, no reason why her counsel should, in argument to the jury,

endeavor to excuse her for any change in her attitude. Yet, counsel in his argument to the jury said: "We cannot blame that woman for exhausting all the efforts she could to prove that this boy was not insane, but now with the record as it is and with knowledge of the fact that he was insane at the time that he killed this man, are we going to let the only beneficiary in this transaction be the insurance company? Down at Waco they received Sam Plunkett's hard earned money for this insurance policy." In view of the testimony which had been admitted, this, in our opinion, informed the jury that Temple Dickson was acquitted on the ground of insanity, and was an insistence that because thereof, the plaintiff now had the right to recover under the double indemnity provision. The same information was reinforced by that part of his argument as follows: "I have walked with this woman for a year in this transaction, and I want to know what the court will sometime finally say whether this man is insane or not. I want to know if he can be insane for one purpose and sane for the benefit of the insurance company." It was the right of the defendant in this case to have the sanity or insanity of Dickson established wholly without reference to the result of his trial at Wichita Falls. The argument in question invaded this right. We cannot say that it did not influence the verdict of the jury, and the presumption is that it did.

By point 10, argument of counsel is complained of from which we quote the following as being material: "If you find that this man was insane, he could not form an intention under the laws of this country, and if he could not have an intention, how could Norwood know of an intention that did not exist * * * I believe from the testimony that you will go out and say you find from a preponderance of the evidence that this young man was insane, that Norwood did not have knowledge of any unlawful intention on the part of Dickson because there was no reason or motive for it, and because nobody has testified to any such thing, and *another reason is because he could not have had any intention if he was insane.*" (Italics ours.) Had counsel merely contended before the jury as a deduction, or inference, of his own, that if Dickson was insane he could not have had any intention, and, therefore, Norwood could not know of such intention, a different question would be presented, and one we apprehend of no little difficulty. We think the effect of counsel's argument was to tell the jury that such was the law. As a statement of law it was incorrect, or at least misleading. Pruitt v. State, 91 Tex. Cr. R. 189, 237 S. W. 572. The action of the court in refusing, upon request, to instruct the jury not to consider that argument indicated to the jury that such was the view of the trial judge. It was calculated to prejudicially influence the verdict of the jury.

For the reasons discussed, it is our opinion that the judgment of the court below must be reversed and the cause remanded.