## UNITED LIFE AND ACCIDENT INSURANCE COMPANY *v.* EVA PROSTIC.

[No. 64, October Term, 1935.]

*Decided January 15th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Webster S. Blades,* with whom were *Blades & Rosenfeld* on the brief, for the appellant.

*Simon E. Sobeloff,* with whom were *Harry M. Miller* and *Wm. Taft Feldman* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appeal is from a judgment for additional, double indemnity payable under insurance against death "as the result of bodily injury * * * through external, violent, and accidental means, * * * provided such death shall not result from homicide." Death resulted from injuries received by the insured in a severe beating by robbers, and the appellant contends that as it resulted from homicide the further indemnity is not payable. The fact that a severe beating by robbers was the cause of death is not denied by the plaintiff. On the contrary, it is relied upon as bringing the death within the accident insurance. Its occurrence is found only from evidence on the plaintiff's behalf. The defendant, on the other hand, has raised no question of the propriety of classing such a death as one from injury through accidental means. It has paid the ordinary, single indemnity, and has urged only that the death, on the face of the plaintiff's evidence, resulted from homicide. This court rests the decision on that contention alone.

The trial court, applying the reasoning of some of the cases cited, refused prayers of the defendant insurer for a ruling that the evidence did not, as a matter of law, support recovery.

The evidence is that on the night of March 24th, 1934, in the neighborhood of 9 o'clock, the insured, a shoemaker in Baltimore City, coming home from his work, fell forward into a chair exclaiming, "Oh, my heart, my heart!" And he explained that two colored men had entered his shop pretending at first to have come for a pair of shoes, and then, taking him by his neck, beat him mercilessly, tore his clothes, cut out his pockets, and took his money. At home, he continued his complaints of pain

about the heart, clutching his chest, even when, after two weeks, he appeared much improved and no damage was any longer apparent. He died on May 2nd, and physicians testified that death was in their opinion due to a coronary thrombosis induced by the beating on March 24.

Clauses in accident insurance policies on the causes of death have been fruitful of conflict in constructions. It must be by a true process of construction that the effect of a clause is ascertained; that is, either by accepting a meaning plainly appearing from the words, or, in cases of ambiguity, by choosing between two or more permissible meanings. It is not within the function of the court to impose a meaning on the contract. "A policy of insurance and every clause and part thereof is the contract, and, like all contracts, should be construed so as to effectuate the real purpose and intention of the parties, giving to the language employed, when unambiguous, its ordinary and usually accepted meaning." *Frontier Mortgage Corporation v. Heft,* 146 Md. 1, 12, 125 A. 772, 776; *American Casualty Co. v. Purcella,* 163 Md. 434, 436, 163 A. 870; *American Automobile Ins. Co. v. Fidelity & Casualty Co.,* 159 Md. 631, 636, 152 A. 523; *Washington Fire Ins. Co. v. Kelly,* 32 Md. 421, 435; *Stipcich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895; *Northam v. Metropolitan Life Ins. Co.* (Ala. Sup. 1935), 163 So. 635. And the conclusion of this court is that the clause now examined will not, in full conformity with these principles, bear the construction which has been put upon it.

Three courts in other jurisdictions have restricted the word "homicide" in similar clauses to exclude from it killings by insane persons. *Great Southern Life Ins. Co. v. Campbell,* 148 Miss. 173, 114 So. 262; *Day v. Interstate Life & Accident Co.,* 163 Tenn. 190, 42 S.W. (2nd) 208; *Texas Life Ins. Co. v. Plunkett* (Tex.Civ.App.1934), 75 S.W. (2nd) 313. In an earlier Texas case cited *(Great Southern Life Ins. Co. v. Cherry* [Tex.Civ.App.] 24 S.W. (2nd) 512), it was agreed that the killing by a sane man was with intent to inflict death, and no question of intent

or lack of it was raised. On the authority of these cases and others, it is argued that the homicides meant to be excluded from the basis of additional indemnity can only be those which result from acts intended to cause death to the insured. And with homicides thus divided, some excluded, some not, according to the presence or absence of that intention, it is deduced that a killing in any one case cannot be excepted from the basis of the allowance unless and until it is shown that it was a killing accompanied by that specific design, that this raises a question of fact, and the burden of proof on it would be on the insurer. It would follow that a verdict for the defendant could not be directed as a matter of law.

In addition to the decisions in cases of killings by insane men, the appellee urges in support of this view that it is improbable that killings by inadvertent, innocent acts of sane men would be within the contemplation of the clause. Decisions by other courts that exceptions, in accident insurance policies, of death by injuries intentionally inflicted, or resulting from intentional acts, contemplate this specific intent to kill, are cited for further illustration. And for the same purpose, we are referred to decisions under like clauses that shooting or throwing a missile without intent to kill any one, or to kill the one who may happen to be killed by it, does not show the specific intent required to except the death from a victim's insurance. These cases of fatal injury without intent to kill, or to kill the actual victims, are, however, subjects of conflicting decisions, and it seems probable that the weight of authority is against the conclusion followed in the present argument. See review of cases in notes 48 *L.R.A.(N.S.)* 524, 56 *A.L.R.* 690, 37 *L.R.A.(N.S.)* 172.

An intention to kill the victim is not, of course, an essential of homicide in its ordinary and usually accepted meaning. There are accidental homicides, and homicides by misadventure, or involuntary manslaughter, as they are sometimes called, in which there is no intention to kill or to harm at all. *Bouvier, Law Dict., Manslaughter;* 4 *Blackst. Com.* 188; *Embry v. Commonwealth,* 236 Ky.

204, 32 S.W. (2nd) 979; *State v. Towers,* 106 Minn. 105, 118 N.W. 361. A killing by an insane man is characterized by a like absence of will, and is for that reason not punishable. And even for criminal homicides the intention is not an essential. "An intention to kill is not necessary to the offense of homicide." *Wharton, Homicide,* sec. 87. No intent to kill the particular victims may exist in cases of death by a shooting or throwing into a crowd, or in killing one person mistaken for another; yet the acts may be murder. *Reg. v. Price,* 8 Cox, C. C. 96; *Collier v. State,* 39 Ga. 31, 99 Am. Dec. 449; *Stovall v. State,* 106 Ga. 443, 32 S.E. 586; *State v. Thomas,* 127 La. 576, 53 So. 868; *Commonwealth v. Marshall,* 287 Pa. 512, 519, 135 A. 301; *Commonwealth v. Breyessee,* 160 Pa. 451, 456, 28 A. 824; *State v. Gilman,* 69 Me. 163, 170; *Keaton v. State,* 41 Tex.Cr.R. 621, 57 S.W. 1125; *Wharton, Criminal Law* (12th Ed.) secs. 427, 449. And when the person acting has no intention to injure anybody, but death is a result of unlawful action endangering life, there is manslaughter, at least. "It is not necessary that he should have intended the particular wrong which resulted from his act. If he intends to do an unlawful and wrongful act, which is punishable because it is wrong in itself, and in doing it he inflicts an unforeseen injury, he is criminally liable for that injury." *Commonwealth v. Hawkins,* 157 Mass. 551, 553, 32 N.E. 862, 863; *State v. Lehman,* 131 Minn. 427, 430, 155 N.W. 399; *Killian v. State,* 184 Ark. 239, 242, 42 S.W. (2nd) 12. "There are many acts so heedless and incautious as necessarily to be deemed unlawful and wanton, though there may not be any express intent to do mischief, and the party committing them causing death by such conduct will be guilty of manslaughter." 1 *Russell, Crimes,* 636; *Wharton, Criminal Law* (12th Ed.) secs. 157, 519, and 804. When lack of subsequent care permits an injury to develop and result in an unintended death, the person causing the injury may be guilty of murder. *Hopkins v. United States,* 4 App.D.C. 430, 439; *Commonwealth v. Kilburn,*

236 Ky. 828, 830, 34 S.W. (2nd) 728. Death from a severe beating such as that described in the plaintiff's evidence in the present case is a criminal homicide even when the death is not intended. It may be murder in the second degree. *Wharton, Homicide,* sec. 87; *Killian v. State,* 184 Ark. 239, 242, 42 S.W. (2nd) 12; *Commonwealth v. Marshall,* 287 Pa. 512, 519, 135 A. 301. And when it is committed in aid of a robbery, it is murder in the first degree under the statute of this state. Code, art. 27, sec. 400. See, generally, 43 *Yale Law Journal,* 537, etc.

The principle that a legatee, who causes the death which is to bring the legacy in force, shall not take the legacy, has been applied when a legatee convicted of manslaughter had in fact no intention to kill. The court declined to sanction a distinction on that ground, in the case of *In re Hall* [1914] Prob. 1, cited in *Price v. Hitaffer,* 164 Md. 505, 512, 165 A. 470. See 29 *Mich. Law Rev.* 745, 752.

In some of these authorities, but apparently not in the greater number, the language of conclusive presumption is used. The intention to produce the death or other injury is said to be conclusively presumed. It has long since been made clear that a conclusive presumption is a rule of substantive law rendering the fact irrelevant. *Wigmore, Evidence,* sec. 2492. And with reference to deaths caused in the commission of the greater felonies, with one of which this case is concerned, the substantial reason for classing them as murders seems rather to be that the felonies are so frequently attended by deaths, that the guilty persons must be considered as engaging in acts of a nature to threaten the deaths. 43 *Yale Law Journal,* 560; *Wharton, Homicide,* sec. 119.

If, then, following the first canon of construction, we take the word "homicide" in its ordinary and usually accepted meaning, the deaths by homicide, for which additional indemnity is denied under this policy, must include deaths from unlawful acts such as that of the robbers, even if that result was not intended. To construe the expression otherwise, and adopt the plaintiff's con-

struction, we should have to read into the clause a purpose to exclude from homicides all manslaughters, many second degree murders, and many first degree murders, as in this instance. It seems to this court that we lack sufficient warrant for supposing that the clause contemplated this unusual, limited, use of the word. If it must be held that homicides by insane persons, or other homicides without voluntary act, are not included, which we need not decide now, it might be done by confining the exception to deaths caused by voluntary acts, without requiring for the sake of consistency that all homicides, from manslaughter to murder in the first degree, in which death to the victims has not been intended, shall be withdrawn from the excepting clause. But whether that distinction could be supported or not, it is not permissible, in our opinion, to exclude by a process of construction all deaths so caused, particularly a death which constitutes such a highly criminal homicide as that described in this case.

The defendant's prayers for rulings that recovery of the additional indemnity could not be had under the terms of the policy should, we think, have been granted.

*Judgment reversed, without a new trial, with costs.*