## WALTERS v. GREAT NAT. LIFE INS. CO.
### No. 13340.

Court of Civil Appeals of Texas. Fort Worth.

March 13, 1936.

Rehearing Denied April 17, 1936.

B. M. Bates and B. Ray Smith, both of Dallas, for appellant.

Webster Atwell, of Dallas, for appellee.

DUNKLIN, Chief Justice.

Marion Marie Walters has appealed from a judgment of the district court of Dallas county, sustaining a general demurrer to

her petition, seeking a recovery on a life insurance policy issued to her husband, Joel Alfred Walters, in which she was named as beneficiary.

According to allegations in the petition, defendant issued to plaintiff's husband, Joel Alfred Walters, an original policy of insurance No. 11134, and also a supplemental contract reading:

"Great National Life Insurance
Company, Dallas, Texas.

"Supplemental Contract attached to and forming a part of Life Insurance Policy No. 11134 on the life of Joel Alfred Walters.

"Double Indemnity Benefit.

"It is hereby agreed between the Great National Insurance Company, hereinafter referred to as the Company, and the Insured under Policy No. 11134, that the Company, subject to the terms and conditions herein contained, in addition to the amount payable under the life insurance policy, will pay to the beneficiary or beneficiaries under said policy the sum of $1,000.00 in the event of the death of the Insured resulting solely from bodily injuries caused directly, exclusively and independently of all other causes, by external, violent and accidental means within ninety days from the occurrence of such accident, such accident being evidenced by a visible contusion or wound on the exterior of the body of the Insured (except in case of drowning and internal injuries revealed by autopsy), and provided such death results during the premium paying period under the policy and before the anniversary of the policy nearest the the Insured's sixtieth birthday and while the policy and this supplemental contract are in full force and effect.

"The provisions of the policy concerning payment of premiums, optional or installment methods of settlement, proof of death, change of beneficiary and assignment shall be considered a part hereof. No other provisions of the policy unless specifically mentioned herein shall be held or deemed to be a part of this supplemental contract.

"This agreement to pay an additional amount in case of accidental death shall not cover self-destruction (sane or insane) or any attempt thereat, homicide, or death resulting from or incident to any act in violation of law by the Insured or from riding or being in or upon any submarine or aerial device or conveyance, or caused by or contributed to by physical or mental infirmity or directly or indirectly from illness or disease of any kind, or any kind of poison or inhaling gas, whether voluntary or otherwise. This supplemental contract shall also become null and void if the Insured shall engage in military, naval or allied service, or shall engage in Red Cross service in time of war or engage in any similar welfare or relief service requiring the assumption of any of the hazards of warfare.

"The extra premium required under this supplemental contract shall be subject to the Automatic Premium Loan provision of said policy in the same manner as the regular premium under the policy.

"The provisions of this supplemental contract and all benefits secured thereby shall become null and void at the end of the premium paying period under the policy, or on the anniversary of the policy nearest the Insured's sixtieth birthday, or upon default in the payment of any premium under the policy or any additional premium required herein, or upon the approval of any disability claim. The double indemnity benefit shall not apply to initial term insurance or to any paid-up life, paid-up endowment or paid-up insurance to which the Insured may be entitled under the nonforfeiture provisions of the policy.

"This agreement for double indemnity may, upon the written request of the insured and assignee, if any, be annulled and the premium under the policy will be reduced by the consideration charged for this extra benefit, provided the policy be returned to the Company for such change.

"The consideration for the benefit provided in this supplemental contract is an additional premium of $1.50 which is included in the premium named in the policy. The premium payable, if any, after this supplemental contract terminates will be the premium stated on the first page of the policy less the amount of such additional premium."

Following are allegations in plaintiff's petition:

"Plaintiff further alleges that during the premium paying time and while said life insurance policy and said supplemental contract of double indemnity benefit were in full force and effect, and on the 8th day of August, A. D. 1933, the said insured, Joel Alfred Walters, met his accidental death from bodily injuries caused

directly, exclusively, and independently of all other causes by external, violent and accidental means, evidenced by a visible contusion or wound on the exterior of the body of the insured, and within ninety days from the receipt of such bodily injuries, inflicted upon him by one E. D. (Dick) Robins, in that the insured was shot by said E. D. (Dick) Robins with a deadly weapon, towit: a pistol, causing the death of the said Joel Alfred Walters.

"Plaintiff further alleges that at the time Joel Alfred Walters was so killed by said E. D. (Dick) Robins, he was not in nor near his 60th birthday anniversary, and·that his death was not caused or actuated, directly or indirectly nor contributed to by self-destruction, or any attempt thereat, homicide, or death resulting from or incident to any act in violation of law by the said insured, or from riding or being in or upon any submarine or aerial device or conveyance, or caused by or contributed to by physical or mental infirmity or directly or indirectly from illness or disease of any kind, or any kind of poison or inhaling of gas, voluntary or otherwise; that at the time that insured met his said death he was not, nor had he previously been, engaged in military, naval or allied service, or engaged in Red Cross Service in time of war or engaged in any similar welfare or relief service requiring the assumption of any of the hazards of warfare, and said insured was not engaged in following, committing, or under any of the exceptions to the payment of said double indemnity benefit as set out in 'Exhibit A' attached hereto.

"Plaintiff alleges that on or about the 23rd day of August, A. D. 1933, the defendant paid to her as beneficiary the sum of One Thousand ($1,000.00) Dollars in satisfaction of any and all claims upon and under said policy of life insurance No. 11134 in so far as the same pertains to the life benefit thereunder, but failed and refused to pay to plaintiff as beneficiary the $1,-000.00 contracted to be paid under said supplemental contract of double indemnity ben·efit, and that plaintiff and defendant at that time entered into a written agreement expressly providing that plaintiff did not release the defendant from any liability resting upon it in connection with the double indemnity benefit as provided in said pol·icy contract.

"Plaintiff would further allege and show to the court that at the time and on the occasion when the said insured came to his death as aforesaid, neither said insured, nor this plaintiff, believed, or had any reason to believe, that he would meet his death as he did so meet it, or come to his death in any wise or manner; that neither the insured nor this plaintiff's acts caused, or contributed to cause, or bring about insured's death as afore alleged.

"Plaintiff would further allege that the wounds inflicted upon the said Joel Alfred Walters as above set out that·caused his death, were evidenced by a visible contusion or wound on the exterior of the body of the·said Insured.

"That at the time of the death of said insured the Life Insurance Policy and the Double Indemnity Benefit contract were both in full force and effect, and had been fully complied with by the insured."

Then follow allegations that proof of death was made and furnished to defendant in accordance with the terms of the policy, and payment refused; also employment of attorneys to institute the suit; followed by a prayer for judgment for the $1,000 stipulated in the double indemnity contract, with 6 per cent. interest from its due date, plus the statutory penalty of 12 per cent. and attorney's fees.

In briefs by both parties filed here, it is assumed that the general demurrer to plaintiff's petition was sustained upon the one conclusion reached by the trial court, that the death of the insured, resulting from being shot by E. D. (Dick) Robins, with a deadly weapon, was a homicide, and therefore came within the expressed exceptions of the contract. Whether or not that ruling was erroneous, is the only question to be determined here.

In the able and exhaustive briefs of appellant, many decisions are cited sustaining recoveries on policies upon construction placed on the terms of different policies there involved by application of different well-recognized rules of construction when words used in a contract of insurance are uncertain in their meaning or when there is ambiguity in its terms.

An extended review of those decisions would unduly prolong this opinion and .is unnecessary, in view of our conclusions hereinafter shown. But all those authorities recognize the force of the familiar rule that, in the absence of fraud; accident, or mistake inducing its execution, if the words used in a written contract have a definite meaning and the contract when

read as a whole is free of ambiguity, it must be enforced as written.

■ The following statement in 10 Tex. Jur. § 158, p. 271, is well supported by the authorities there cited: "The purpose of rules of construction is to enable the court to ascertain from the language used in a contract the manner and extent, to which the parties intended to be bound. The term 'construction' implies uncertainty as to the meaning of the contract; where a contract is clear and unambiguous there is nothing to be construed. In such circumstances arbitrary rules of construction should not be resorted to; the contract must be performed as written, and the court will enforce it according to its terms. Construction may be necessary, however, though the words to be interpreted are not in themselves ambiguous."

■ Also paragraph 160, p. 274, reads as follows:

"The intention of the parties to a written contract must be determined primarily from the terms of the instrument itself and the language used, and no intention, however, discovered, can contradict or destroy the legal effect of the terms used.

"The court will determine what contract the parties actually have made, and not what contract they had in mind to make, nor what contract they thought they had made. All their thoughts,, plans, purposes and intentions are conclusively presumed to be embodied and expressed in the written contract; and they will be held to have known the meaning of the words used in it and the legal effect of the contract which is constituted by the language. If the written contract is clear and certain, it must be taken to express their intention, and will be enforced as written, no matter what their actual intention may have been, in the absence of a showing of fraud or mutual mistake."

We are unable to find any ambiguity in the contract for double indemnity now under review, nor any uncertainty of meaning of the terms employed.

Article 1201 of the Penal Code of this state reads: " 'Homicide' is the destruction of the life of one human being by the act, agency, procurement, or culpable omission of another."

Similar definitions are to be found in vol. 4, Words and Phrases, First Series, p. 3339.

■ If facts had been alleged and proven showing that the killing of the insured was accidental and not intentional by E. D. Robins, then it might be argued that the deceased came to his death by accidental means, within the meaning of the first provision of the policy, as held in some of the decisions. But there was no such allegation, and in 13 R.C.L. page 741, the following statement is applicable, even in criminal prosecutions: "In the absence of evidence to the contrary, he who takes the life of another by the infliction of a wound, or by some other means calculated to produce death, is presumed to have intended that result and to have incurred the penalty of an intentional killing"—citing many decisions, including decisions of our Court of Criminal Appeals.

Of like effect were the decisions of the Commission of Appeals in Jefferson Standard Life Ins. Co. v. Myers, 284 S.W. 216, and Texas Life Ins. Co. v. Plunkett (Tex. Civ.App.) 75 S.W.(2d) 313.

■ It is our conclusion that "homicide," as used in the exception in the policy, must be construed as a separate exception independent of other exceptions therein expressed; that there is no ambiguity in the contract; and that the death of the insured as the result of being shot with a pistol, a deadly weapon, by E. D. (Dick) Robins, is a complete bar to plaintiff's suit.

Jefferson Standard Life Ins. Co. v. Myers (Tex.Com.App.) 284 S.W. 216; Day v. Interstate Life & Accident Co., 163 Tenn. 190, 42 S.W.(2d) 208; Johnson v. Travelers' Ins. Co., 15 Tex.Civ.App. 314, 39 S. W. 972 (writ refused); Texas Life Ins. Co. v. Plunkett (Tex.Civ.App.) 75 S.W.(2d) 313; National Life & Accident Ins. Co. v. De Lopez (Tex.Civ.App.) 207 S.W. 160; Continental Casualty Co. v. Morris, 46 Tex. Civ.App. 394, 102 S.W. 773; Travelers' Protective Association of America v. Weil, 40 Tex.Civ.App. 629, 91 S.W. 886 (writ refused).

Accordingy, the judgment of the trial court is affirmed.