## MARION MARIE WALTERS V. GREAT NATIONAL LIFE INSURANCE COMPANY.

No. 7120. Decided February 15, 1939.
(124 S. W., 2d Series, 850.)

B. M. Bates, B. Ray Smith, both of Dallas, for plaintiff in error.

An appellate court in passing upon the sufficiency of a petition as against a general demurrer must assume that every fact pleaded, tested solely by the petition, is true, and every reasonable intendment arising under the pleading must be indulged in favor of its sufficiency. Hill v. Preston, 119 Texas 522, 34 S. W. (2d) 780; Martinez v. Gutierrez, 66 S. W. (2d) 678; Davies v. Texas Employers Insurance Association, 16 S. W. (2d) 524, 29 S. W. (2d) 987.

Webster Atwell, of Dallas, for defendant in error.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission to Appeals, Section B.

The Court of Civil Appeals affirmed the judgment of the trial court sustaining the general demurrer of Great National Life Insurance Company, defendant in error, to the petition of Mrs. Marion Marie Walters, plaintiff in error, in her suit against the insurance company to recover double indemnity on account of the accidental death of her husband, the insured. 92 S. W. (2d) 1136.

By supplemental contract attached to the policy the insurer agreed that it would pay to the beneficiary the additional sum of $1000.00 "in the event of the death of the Insured resulting solely from bodily injuries caused directly, exclusively and independently of all other causes, by external, violent and accidental means within ninety days from the occurrence of such accident, such accident being evidenced by a visible contusion or wound on the exterior of the body of the insured (except in case of drowning and internal injuries revealed by autopsy)." The supplemental contract contained the further provision:

"This agreement to pay an additional amount in case of ac-

*cidental death shall not cover self-destruction* (sane or insane) or any attempt thereat, *homicide,* or death resulting from or incident to any act in violation of law by the Insured or from riding or being in or upon any submarine or aerial device or conveyance, or caused by or contributed to by physical or mental infirmity or directly or indirectly from illness or disease of any kind, or any kind of poison or inhaling of gas, whether voluntary or otherwise. This supplemental contract shall also become null and void if the Insured shall engage in military, naval or allied service, or shall engage in Red Cross service in time of war or engage in any similar welfare or relief service requiring the assumption of any of the hazards of warfare." (Our italics).

The allegations in the petition are sufficient to state a cause of action for the recovery of the additional sum payable in the event of accidental death, unless, as contended by defendant in error and as held by the Court of Civil Appeals, such allegations, tested by general demurrer, show that the death of the insured was caused by homicide within the meaning of the word as used in that part of the supplemental contract which states exceptions to the agreement to pay double indemnity.

The allegations of the petition with respect to the manner and cause of the insured's death are as follows:

"Plaintiff further alleges that during the premium paying time and while said life insurance policy and said supplemental contract of double indemnity benefit were in full force and effect, and on the 8th day of August A. D. 1933, the said insured, Joel Alfred Walters met his accidental death from bodily injuries caused directly, exclusively, and independently of all other causes by external violent and accidental means, evidenced by a visible contusion or wound on the exterior of the body of the insured, and within ninety days from the receipt of such bodily injuries, inflicted upon him by one E. D. (Dick) Robins, *in that the insured was shot by said E. D. (Dick) Robins, with a deadly weapon, to-wit: a pistol, causing the death of the said Joel Alfred Walters.*

"Plaintiff further alleges that at the time Joel Alfred Walters was so killed by said E. D. (Dick) Robins, he was not in nor near his 60th birthday anniversary, *and that his death was not caused or actuated, directly or indirectly, nor contributed to by* self-destruction, or any attempt thereat, *homicide,* or death resulting from or incident to any act in violation of law by the said insured, or from riding or being in or upon

any submarine or aerial device or conveyance, or caused by or contributed to by physical or mental infirmity or directly or indirectly from illness or disease of any kind, or any kind of poison or inhaling of gas, voluntary or otherwise; that at the time that insured met his said death he was not, nor had he previously been, engaged in military, naval or allied service, or engaged in Red Cross Service in time of war or engaged in any similar welfare or relief service requiring the assumption of any of the hazards of warfare, and said insured was not engaged in following, committing, or under any of the exceptions to the payment of said double indemnity benefit as set out in 'Exhibit "A"' attached hereto." (Our italics).

■■ The Court of Civil Appeals construed the allegation that the insured's death was the result of his being shot by E. D. Robins with a pistol as being an averment that his death was caused by homicide. There appears, however, in the next succeeding paragraph of the petition the positive allegation that the death of the insured was not caused or actuated, directly or indirectly, nor contributed to by homicide. It is our duty to take both allegations as true and to give effect to both if this can reasonably be done. It is provided by Rule 17 for district and county courts that in passing upon a general demurrer every reasonable intendment arising upon the pleading excepted to will be indulged in favor of its sufficiency. Pursuant to this rule, it is held that the court is authorized to sustain a petition as good against general demurrer when essential facts may fairly be inferred from the facts alleged; and it is further held that a pleading containing allegations in the nature of conclusions of the pleader from facts not revealed, and on that account subject to special exception, is not fatally defective when tested by general demurrer. Humphries Oil Company v. Liles (Com. App.) 277 S. W. 100, 102; Garza v. Kenedy (Com. App.) 299 S. W. 231, 233; Martinez v. Gutierrez (Com. App.) 66 S. W. (2d) 678, 685; Hovencamp v. Union Stockyards Company, 107 Texas 421, 425, 180 S. W. 225; Houston North Shore Ry. Co. v. Tyrrell, 128 Texas 248, 264, 98 S. W. (2d) 786, 108 A. L. R. 1508; Whatley v. Cato Oil Co., 115 S. W. (2d) 1205.

The substance of the allegations of the petition as to the cause of the death of the insured is that he was shot by one Robins with a deadly weapon but that his death so caused was not the result of homicide. The pleading is defective and subject to special exception, for want of particularity and because the allegation that the death did not result from homicide is a conclusion of the pleader from facts which should

have been averred, but, under the rules above stated, it is not fatally defective.

■ Since it is apparent that the pleader was undertaking to allege that the insured's death was not the result of homicide within the meaning of that term as used in the contract, we are brought to a consideration of the meaning of the word "homicide" so used. If the word "homicide" is to be given its broad meaning, the killing of one person by another, then the particular allegations as to the cause of the insured's death, that is, that he was killed by Robins with a deadly weapon, constitute an admission on the part of the pleader that the death was the result of homicide and was within one of the exceptions expressed in the contract. If, on the contrary, the word "homicide" has or can reasonably be given a restricted meaning, as not comprehending unintentional homicide, when used in such contract without qualifying or explanatory words, then we are authorized to construe the particular allegations as to the manner in which the insured met his death, in connection with the averment that his death was not the result of homicide, to mean that, although the insured was shot by Robins with a deadly weapon and died from the shot, the killing of the insured occurred under such circumstances that it was not homicide within such restricted meaning of the term.

The authorities support the conclusion that the word "homicide" is used in the contract under consideration in the sense of intentional homicide. The policy construed in Jefferson Standard Life Insurance Company, v. Myers (Com. App.) 284 S. W. 216, provided that double indemnity for accidental death would not be paid in case death resulted "from bodily injury inflicted by another person." The insured came to his death from a gunshot wound inflicted by an insane woman. It was held that the insured could not escape liability under the exception contained in the policy unless it was shown that the injury inflicted by another person was intentionally inflicted, and that the insurer was liable because the insane person who shot the insured could not exercise any intention.

The Supreme Court of Mississippi, in construing a policy containing a contract for the payment of double indemnity for accidental death "provided such death shall not be the result of homicide," held that the insurer was liable for the double indemnity, the insured having been killed by an insane person. The court, after quoting at length from the opinion in Jefferson Standard Life Insurance Company v. Myers, supra, con-

cluded that the true meaning and intention of the policy was that the "homicide" must be the result of the act of a sane man. Great Northern Life Insurance Company of Houston, Texas, v. Campbell, 148 Miss. 173, 114 So. 262, 56 A. L. R. 681.

The Mississippi case was approved and followed by the Supreme Court of Tennessee in Day v. Interstate Life and Accident Company, 163 Tenn. 190, 42 S. W. (2d) 208. The policy involved in the case last cited contained as a part of the double indemnity provision the following paragraph: "This agreement to pay double the amount insured in the event of death as above recited will be of no effect in case of homicide or self-destruction, whether sane or insane." The phrase "whether sane or insane" was held to qualify the word "self-destruction" and not the word "homicide." The opinion makes reference to the settled rule that provisions of accident policies excluding liability in cases of injuries intentionally inflicted are inapplicable where the insured is injured or killed by one who mistakes him for another. See: General Accident, Fire & Life Assurance Corporation v. Hymes, (Okla.) 185 Pac. 1085, 8 A. L. R. 318, and Note pp. 322-325; See v. North American Accident Insurance Company (Cal.) 213 Pac. 42, 26 A. L. R. 123.

The recent decision of the Court of Civil Appeals at Waco in Great Southern Life Insurance Company v. Akins, 105 S. W. (2d) 902, in which application for writ of error was refused, is not in conflict with the foregoing authorities, for the policy construed in that case excluded liability in the event of the death of the insured "be the result of *intentional or unintentional* homicide." (Our italics). The insured was killed by a bullet from a gun in the hand of another when the two were scuffling. It was held that, whether the killing was accidentally or purposely done, the beneficiary was not entitled to collect the additional benefits, because the insured's death was the result either of intentional or of unintentional homicide.

Homicide is thus defined in Article 1201 of the Penal Code: " 'Homicide' is the destruction of the life of one human being by the act, agency, procurement, or culpable omission of another." Under this definition the destruction of the life of one human being by the nonculpable omission of another is not homicide; and if the word "homicide" used in the policy and in the petition is given the meaning of its definition in the Penal Code, the allegations in the petition may reasonably be construed to mean that the insured was shot by Robins accidentally and without negligence, that is, that the shooting was caused by nonculpable omission on the part of Robins.

It is our opinion, in view of the authorities above cited, that the word "homicide" is used in the supplemental contract in the sense of intentional homicide, and further that, when the particular allegations as to the manner and cause of the insured's death are read together with the averment that his death was not caused by homicide, the petition may reasonably be construed to allege, in express averment and in facts fairly inferred therefrom, that the insured was shot by Robins under such circumstances that the killing was not homicide, that is, either that Robins unintentionally shot the insured or that Robins was insane. The general demurrer should have been overruled.

We do not sustain the contention of plaintiff in error that the phrase "resulting from or incident to any act in violation of law by the insured" in the paragraph making exception to the agreement for double indemnity qualifies or modifies the word "homicide" as well as the word "death." It is clearly apparent from the entire sentence, and especially from the phrases subsequent to that quoted, that the quoted phrase, like each of the several subsequent phrases, qualifies or modifies "death" and not "homicide." Day v. Interstate Life & Accident Company, 163 Tenn. 190, 42 S. W. (2d) 208. Homicide, without qualification or explanation, is made a separate exception.

The judgments of the district court and the Court of Civil Appeals are reversed and the cause is remanded to the district court.

Opinion adopted by the Supreme Court February 15, 1939.