*Raymond E. Jordan, Sherwood & Clifford*, for defendant.

LOUELLA BLACK *vs.* MASSACHUSETTS ACCIDENT COMPANY.

JANUARY 21, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

BAKER, J. This is an action of assumpsit brought on an accident policy insuring the plaintiff's husband against loss of life.

The case was heard in the Superior Court without a jury, and the trial justice rendered a decision for the plaintiff for $150 with interest. The matter is now before this court on the exceptions of both parties to this finding.

To determine the rights of the parties herein, it is necessary for the court to construe the policy in relation to the facts as proved. Its pertinent provisions are as follows:

"Accident Provisions. (C) Total loss of time. In the sum of seventy dollars per month for total loss of time for a period not exceeding five consecutive years, resulting directly and independently of all other causes from bodily injury sustained during the life of this policy, caused solely through external, violent and accidental means (excluding suicide, sane or insane), and such as shall, either from the date of the accident, or within ten days thereafter, continuously and wholly disable and prevent the insured from performing every duty pertaining to any business or occupation, and not resulting in any loss specified in Paragraph E.

"(E) Specific losses. If such injury as described in Paragraph C shall within thirty days from date of accident, result in one of the following specific losses, the company will pay one of the following benefits: For loss of life, eight hundred dollars, the principal sum.

"(F) Accumulation feature. For each consecutive month immediately preceding the date of the accident that this policy shall have maintained in continuous force, one per cent. shall be added to the original amount provided for any loss under Paragraph E sustained by the insured, but such additions shall never exceed fifty per cent. of such original amount.

"General Provisions. (S) Not Covered. The company is not liable for any loss caused by or from the use of intoxicants or narcotics; venereal diseases; dis-

eases of organs not common to both sexes; homicide; suicide; or disability originating or suffered outside the states of the United States, the District of Columbia, or Canada."

The testimony reveals that the above policy was issued to insured, April 15, 1925. In the application therefor he described his occupation as "Chauffeur—private passenger car". On the night of September 24, 1934, the policy then being in full force and effect, the insured and several other men were seated at tables in an attic room in the insured's house in Providence engaged in handling number slips used in an illegal and somewhat hazardous gambling enterprise operated by him, and known as "Nigger Pool". In the room, among other things, were two adding machines, a safe and a filing cabinet. At the above-mentioned time several men with guns entered this room and ordered the occupants to get up and face the wall. One of the insured's companions moved his hand toward a pocket in order to conceal his money, whereupon several shots were fired by the men who had just come in, the insured and his companion being seriously injured, and the insured dying shortly thereafter from a gunshot wound.

In passing upon the policy, the trial court found that the insured's death resulted from accidental means, and that "homicide", as used in paragraph "S" of the general provisions relating to matters not covered by the policy, meant a "homicide" contributed to by the fault of the insured.

In construing the word "accidental", as used in policies substantially similar to the one now before us, courts generally have considered the matter from the viewpoint of the person upon whom the injury has been inflicted, and have applied to the word a broad and liberal meaning. Such authorities hold, that if one is wholly free from any culpability in provoking or inducing the act which causes his own injury or death, then the result or means is accidental, even though the other person may have acted in-

tentionally. It is otherwise, however, if the injured person is not free from such culpability. *Interstate Business Men's Acc. Association* v. *Lister*, 257 Fed. Rep. 225. In other jurisdictions the test applied is whether or not the insured could reasonably have anticipated the happening. The rule is stated in *Mutual Life Insurance Co. of New York* v. *Distretti*, 159 Tenn. 138, as follows: "Although injury be intentionally inflicted by another nevertheless if the injury was not naturally to be foreseen by the insured, it is an accidental injury within the meaning of a policy such as the one before us. . . . The foregoing rule is often stated with the further qualifications that the insured has been guilty of no misconduct and has made no assault on the person from whom he receives the injury." See also *Norris* v. *New York Life Ins. Co.*, 49 Fed. (2d) 62; 20 A. L. R. 1123, note.

Assuming for the purposes of the present case that the death of the plaintiff's husband resulted from "accidental" means within the terms of the policy in question, then it becomes necessary to consider the proper construction to be placed upon the word "homicide" as used in paragraph "S" of the general provisions of the policy.

While the definition is not entirely accurate or comprehensive, "homicide" is frequently defined as the killing of a human being by another human being. It may be felonious or non-felonious, unlawful or lawful. 29 C. J. 1049. In the policy now under consideration "homicide" is used, without any limiting or modifying word. Its insertion into the non-coverage clause must be given some effect. The apparent object of its inclusion was to bring about the removal from the operation of the policy of that type of death, resulting from external, violent and accidental means, which was caused by homicide.

The plaintiff contends, however, that to determine the proper meaning to be given the word in question the theory or doctrine of associated words, which take color from each other, should be applied. 59 C. J. 981. She

urges that, by so doing, it will appear from an examination of the other words and phrases included in paragraph "S" that they relate only to circumstances and conditions which are brought about by some act or participation of the insured himself, and that this construction should, therefore, be applied to "homicide" as used in that paragraph. If this were done, she maintains that the facts of the instant case would prevent the provisions of that paragraph from applying herein. In our opinion this argument, though plausible, is not sound. We see no reasonable basis, on the ground of association, for applying to the word "homicide", which is here used generally, the condition or limitation contended for.

Moreover, the construction urged by the plaintiff would render the exception "homicide", as used in paragraph "S", practically nugatory, when considered in relation to death resulting from "accidental" means, as set out earlier in the policy, because of the generally accepted meaning, hereinbefore referred to, placed upon the word "accidental" as used in policies of this type. Generally speaking a homicide brought upon the insured by his own acts or in which he actually participated, or which he naturally could have foreseen, would not, in any event, be covered by the policy as a death from "accidental" means. It is not reasonable to assume that the parties to the contract contemplated or understood that the exclusion of "homicide" from the coverage of the policy was to be considered merely as a partial duplication of the limitation of the coverage to "bodily injury . . . caused solely through external, violent and accidental means", and therefore largely superfluous. Such construction furnishes no apparent reason for the inclusion of "homicide" in paragraph "S", the non-coverage clause.

There are authorities which limit, under certain circumstances, the application to be given the word "homicide", as used in policies generally similar to the one now before us. Where such a policy provides that the insurer will not

be liable, in case of accident, for double indemnity if death results from homicide, it has been held that, when the homicide was due to the act of an insane person, then recovery of the double indemnity is allowed, as the meaning and intent of the policy, is that the homicide, to be a defense, must be the result of the act of a sane person. *Great Southern Life Ins. Co.* v. *Campbell,* 148 Miss. 173. Likewise, an insurer, under such a policy, is exempt from double indemnity only when the homicide was intentional, and one must be sane to be capable of intentionally committing an act. *Day* v. *Interstate Life & Accident Co.,* 163 Tenn. 190. However, where it appeared that an insured died from pistol wounds intentionally inflicted by a sane person, it was held that such a homicide prevented recovery by the beneficiary of double indemnity, the court saying: "In this the contracting parties created a specific exception to a general liability and the exception is as binding as other portions of the contract." *Great Southern Life Ins. Co.* v. *Cherry,* 24 S. W. (2d) 512, (Tex. Civ. App.).

In deciding the instant case it is not necessary for us to give a comprehensive definition of "homicide" as used in paragraph "S" of the policy, or to determine now whether under other possible facts and circumstances a "homicide" may or may not be found to exist, which would or would not bring into operation the non-coverage clause in question. In the present case, the evidence discloses that the insured met his death as the result of acts intentionally committed by armed men acting feloniously. Under the facts disclosed by the testimony herein, we are of the opinion that the insured came to his death through a "homicide" such as was contemplated in and is covered by the provisions of paragraph "S", the non-coverage clause. We find, therefore, that the defendant is not liable to the plaintiff under the policy in any amount.

It follows that the defendant's exception must be sustained and the plaintiffs exception overruled.

The plaintiff may appear, if she shall see fit on January 29, 1937, and show cause, if any she has, why the case should not be remitted to the Superior Court with direction to enter judgment for the defendant.

*Philip S. Knauer, Luigi De Pasquale, Philip S. Knauer, Jr.,* for plaintiff.

*McGovern & Slattery, Fred B. Perkins, William E. McCabe,* for defendant.