*Quinn Tolen v. State of Maryland*
Case No. 300 September Term, 2017
Opinion by Meredith, J.


**CRIMINAL LAW – INVOLUNTARY MANSLAUGHTER BASED UPON UNLAWFUL ACT – SENTENCING – MERGER PURSUANT TO REQUIRED EVIDENCE TEST.** In a case in which a conviction of involuntary manslaughter is for the unlawful act variant of that offense, and is based upon the fact that a death was caused by commission of an unlawful act, a conviction for the underlying unlawful act merges into the conviction of involuntary manslaughter for sentencing purposes, and no separate sentence can be imposed for the conviction of the underlying crime.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 300

September Term, 2017

_____

QUINN RENA TOLEN

v.

STATE OF MARYLAND

_____

Meredith,
Arthur,
Sharer, J. Frederick
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Meredith, J.

_____

Filed: August 28, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Quinn Rena Tolen, appellant, was indicted by a grand jury in the Circuit Court for Washington County on three charges related to the death by overdose of Kelly Lantigua: manslaughter, distribution of heroin, and possession of heroin. After Tolen pled guilty to involuntary manslaughter and distribution of heroin, she was sentenced to a 10-year prison term for involuntary manslaughter, and a concurrent 15-year term for distribution of heroin, with all but seven years of each sentence suspended, to be followed by three years of probation. The possession charge was entered *nolle prosequi*.

Tolen filed an application for leave to appeal, contending that, for sentencing purposes, the court should have merged the conviction of distribution into the conviction of involuntary manslaughter. This Court granted the application for leave to appeal, and, in this appeal, Tolen presents a single question: "Are separate sentences for involuntary manslaughter and distribution of heroin improper?"[1]

For the reasons we explain below, we answer "yes" to Tolen's question, and we shall vacate the sentence that was imposed relative to the conviction of distribution of heroin.

---

[1] In the brief filed in this Court, Tolen also raised a second argument (that had not been presented in her application for leave to appeal), asserting that her conviction of involuntary manslaughter could not stand because her "conduct, as established in the statement of facts offered in support of the guilty plea, does not constitute that offense." But, pursuant to a "Line" filed in this Court prior to oral argument, Tolen advised this Court that she was "withdraw[ing]" the argument regarding "the sufficiency of the factual basis for the guilty plea," and proceeding on the merger issue only. She confirmed at oral argument that she had abandoned the argument regarding sufficiency of the factual basis for her guilty plea as to involuntary manslaughter. It appears that, because the maximum penalty for involuntary manslaughter is less than the maximum penalty for distribution of heroin, Tolen now argues for a result that affirms the conviction for involuntary manslaughter.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2016, Kelly Lantigua died of heroin and fentanyl intoxication. Hagerstown police learned that, on the afternoon that she died, Lantigua had obtained the heroin from Tolen.  A grand jury returned a three-count indictment against Tolen. Count One charged that she "did feloniously, without malice aforethought, kill and slay Kelly Laraine Lantigua, . . .{CR 2-207(a)}"[2]

Tolen's counsel filed a demand for bill of particulars, asking the State to specify with particularity the facts that support the charge of manslaughter, including the acts of the defendant "that are alleged to constitute manslaughter."

In response to the demand for particulars, the State filed a lengthy statement of facts, including the statements contained in text messages between Lantigua and Tolen on the afternoon preceding Lantigua's death. The text messages referred to Lantigua's desire to purchase some heroin from Tolen. The State's response also included a photo of "lines" of heroin that Lantigua and her boyfriend were about to snort, and communications between the boyfriend and Tolen after Lantigua appeared to have experienced a serious reaction caused by snorting the drug Tolen had provided. It was

---

[2] Maryland Code (2002, 2012 Repl. Vol.), Criminal Law Article ("CR"), § 2-207(a) provides:

(a) A person who commits manslaughter is guilty of a felony and on conviction is subject to:
    (1) imprisonment not exceeding 10 years; or
    (2) imprisonment in a local correctional facility not exceeding 2 years or a fine not exceeding $500 or both.

2

noted that the autopsy report "indicates that the cause of [Lantigua's] death was heroin and fentanyl intoxication."

With respect to the acts that constitute manslaughter, the State's bill of particulars first indicated that there was evidence that, when Tolen provided the heroin to Lantigua, Tolen may have actually, but unreasonably, intended to prevent Lantigua from experiencing the pain of withdrawal; the State made a reference to the legal principle that "[i]mperfect self defense . . . operates to negate malice, . . . [and] mitigates murder to voluntary manslaughter." The State's particulars included this summary of facts that would support a claim of voluntary manslaughter:

> The acts of the [D]efendant that are alleged to constitute the crime of manslaughter are that the Defendant acted in partial defense of another person which is a form of voluntary manslaughter. In this case the Defendant actually, though unreasonably, believed that the victim was threatened with serious bodily harm because without her dose of heroin the victim would become seriously ill or "dope sick". Based on the interview of the Defendant recited above the Defendant was aware of the potency of the heroin[,] stating "she hasn't bought heroin from [her usual source] since then, saying she knew something wasn't right about it."

But the State then said in its bill of particulars:

> In the alternative, the State intends to prove Involuntary Manslaughter: Unlawful Act. The State will prove that the Defendant committed an unlawful act prohibited by statute (distribution of heroin)[,] Oates v. State, 97 Md. App. 180, 184, 627 A.2d 555, 557-58 (1993)[,] that was dangerous to life[,] State v. Gibson, 4 Md. App. 236, 242 A.2d 575 (1968).
>
> The case of State v. Gibson, 4 Md. App. 236, 242 A.2d 575 (1968)[,] is informative with respect to the nuances of manslaughter. . . .

3

The State's bill of particulars then set forth (without attribution and with only minor variations) six paragraphs that appear in the *Gibson* opinion at 4 Md. App. at 241-45, stating:

> Manslaughter is a common law offense and a felony in Maryland; it may be voluntary or involuntary, depending upon the requisite intent, and since the crime is not defined by statute, it is afforded its common law meaning in this State. Connor v. State, 225 Md. 543, 171 A.2d 699, 86 A.L.R.2d 892; Chase v. Jenifer, 219 Md. 564, 150 A.2d 251. By Section 387 of Article 27 of the Maryland Code, manslaughter, whether voluntary or involuntary, is punishable by a term of imprisonment not exceeding ten years. . . .
>
> **Involuntary manslaughter** at common law has been generally defined as the killing of another unintentionally and without malice (1) in doing some **unlawful** act not amounting to a felony, or (2) in negligently doing some act lawful in itself, or (3) by the negligent omission to perform a legal duty. See 1 Warren on Homicide (Perm. Ed.1938), 420, 421; 26 Am. Jur. Homicide, Secs. 18, 44; 40 C.J.S. Homicide s 55, and cases therein cited. To this basic definition other authorities add the qualification, as to the first class of **involuntary manslaughter**, that the **unlawful** act be malum in se, and not merely malum prohibitum, and as to the second and third classes of the offense, that the negligence be criminally culpable, i. e., that it be gross. Clark and Marshall, Crimes (Sixth Ed.), Sections 10.04, 10.12-10.14; Perkins on Criminal Law, pp. 34, 57-61; Wharton's Criminal Law and Procedure (Anderson Ed.), Vol. 1, Section 289-292, 296, and cases therein cited.
>
> It is well settled in this State that where a charge of involuntary manslaughter is predicated on negligently doing some act lawful in itself, or by negligently failing to perform a legal duty (the second and third classes of involuntary manslaughter above delineated), the negligence necessary to support a conviction must be gross or criminal, viz., such as manifests a wanton or reckless disregard of human life. State of Maryland v. Chapman, 101 F.Supp. 335 (D.C.Md.); Palmer v. State, 223 Md. 341, 164 A.2d 467; Chaig v. State, 220 Md. 590, 155 A.2d 684; Chase v. Jenifer, supra; Neusbaum v. State, 156 Md. 149, 143 A. 872. . . .
>
> It is likewise clear that the Maryland cases have generally recognized that a charge of **involuntary manslaughter** at common law could in some circumstances at least be based on the doing of an **unlawful** act. In Neusbaum v. State, supra, the court, in defining a felonious

4

homicide, characterized the crime so as to include those cases where one takes the life of another unintentionally and without excuse 'while needlessly doing anything in its nature dangerous to life, or who causes death by neglecting a duty imposed either by law or by contract, or in the course of committing a crime or even a civil wrong.' 156 Md. at page 155, 143 A. at page 875. To like effect, the court in United Life & Accident Insurance Company v. Prostic, 169 Md. 535, 182 A. 421, in discussing a felonious homicide, held at page 539, 182 A. at page 423 that 'when the person acting has no intention to injure anybody, but death is the result of unlawful action endangering life, there is manslaughter, at least.'

Neusbaum and Prostic seemingly share a common thread-that where a prosecution for **involuntary manslaughter** is based on the commission of an **unlawful** act causing death, the act must itself be dangerous to life. As the Prostic court observed, if the person causing the death of another 'intends to do an unlawful and wrongful act, which is punishable because it is wrong in itself, and in doing it he inflicts an unforeseen injury, he is criminally liable for that injury' (since) '(t)here are many acts so heedless and incautious as necessarily to be deemed unlawful and wanton, though there may not be any express intent to do mischief, and the party committing them causing death by such conduct will be guilty of manslaughter.' 169 Md. at page 539, 182 A. at page 423.

* * *

. . . Neusbaum did not concern itself with that species of **involuntary manslaughter** upon which the four counts of the indictment now in question are expressly based, although, as heretofore indicated, the dictum in that case is that, where a prosecution for **involuntary manslaughter** is predicated on the commission of an **unlawful** act causing death, the act must itself be dangerous to life. This dictum would appear to be consistent with the holding in Worthington v. State, 92 Md. 222, 48 A. 355, 56 L.R.A. 353, a case decided in 1901, which concluded, in effect, that since an unlawful attempt to procure an abortion (a misdemeanor) is an act dangerous to life (or malum in se), a death resulting from such an attempt will not be less than manslaughter.

(Bold emphasis was added in the State's bill of particulars; ellipsis marks have been added to this quote to indicate where portions of the *Gibson* opinion were omitted by the State.)

5

On March 21, 2017, Tolen appeared in court to enter a guilty plea. The court conducted an inquiry on the record to determine whether the plea was being entered knowingly and voluntarily. The court asked Tolen: "You understand that you are pleading guilty to two counts today – one is involuntary manslaughter and the other is distribution of heroin. Do you understand that?" Tolen replied: "Yes, sir." The court also asked: "And you've had an opportunity to review th[e] charging document?" Tolen responded "yes" to that question, as well as to the court's follow up question: "And you've had an opportunity to dis—discuss this case with [your attorney]?" But no one explained on the record at the plea hearing the elements of the crime of involuntary manslaughter; nor did anyone explain on the record which variety of involuntary manslaughter would be covered by Tolen's guilty plea. Nevertheless, the court announced on the record: "I'm going to find that her guilty plea is voluntarily made, and intelligently and understandingly made."

The State then made a lengthy presentation of the facts it expected to prove if the case had gone to trial, and Tolen agreed "that the State could produce . . . evidence in support of the facts presented." The court then found Tolen guilty of involuntary manslaughter and distribution of heroin, and proceeded with sentencing. The State had agreed that the executed portion of the sentences would be capped at seven years.

Tolen's counsel argued that, for sentencing purposes, the convictions for involuntary manslaughter (which carried a maximum penalty of ten years) and distribution of heroin (which then carried a maximum penalty of twenty years) should merge under either the required evidence test or principles of fundamental fairness.

Counsel argued: "[W]hat she's charged with is called involuntary manslaughter. It's defined as . . . death resulting from an unlawful act. The act being distribution [of heroin] in this case." "[T]he charge of distribution should merge into the charge of manslaughter for sentencing purposes." "And in this context, the unlawful act [theory] of manslaughter, which I believe is the appropriate one as opposed to a lawful act committed negligently, the unlawful act that is the element of the manslaughter in this case is the act of distribution. And therefore the, the only additional element for the manslaughter is, is the fact that, that a death occurred."[3]

Tolen's counsel argued in the alternative that, "even if you don't have an exact match under *Blockburger* [*v. United States*, 284 U.S. 299 (1932),] of the [required] elements test, you would still have merger under fundamental fairness." Citing *Monoker*

---

[3] In the Maryland Criminal Pattern Jury Instructions (2d ed. 2012, 2013 supp.), unlawful act-manslaughter is defined in MJPI-Cr 4:17.9B as follows (brackets and parentheses in original):

### INVOLUNTARY MANSLAUGHTER--UNLAWFUL ACT

The defendant is charged with the crime of involuntary manslaughter. In order to convict the defendant of involuntary manslaughter, the State must prove:

(1) that [the defendant] [another participating in the crime with the defendant]] [[committed] [attempted to commit]] (unlawful act(s));

(2) that [the defendant] [another participating in the crime] killed (name); and

(3) that the act resulting in the death of (name) occurred during the [commission] [attempted commission] [escape from the immediate scene] of the (unlawful act(s)).

7

*v. State*, 321 Md. 214 (1990), Tolen's counsel urged the court to conclude that it would be fundamentally unfair to punish someone twice by imposing two sentences for the same conduct.

The prosecutor responded that the State "can distinguish the cases cited by [defense] counsel," but also stated, "I would prefer to brief it in writing other than saying today that the State disagrees with the proposition" that the offenses should merge.

The court ruled that the offenses did not merge, stating:

> Mr. [Defense Counsel], I have reviewed the cases. . . .  I do find the, the cases distinguishable. I believe . . . it's not appropriate to merge the charges based on the required evidence test. Nor do I believe the fundamental fairness argument is appropriate under the . . . facts of this case."

The court sentenced Tolen to ten years, with all but seven years suspended, for involuntary manslaughter, and a concurrent fifteen years, all but seven years suspended, for distribution of heroin; all to be followed by three years of supervised probation.

Tolen filed an application for leave to appeal, contending that the circuit court erred in failing to merge the conviction of distribution into the conviction of involuntary manslaughter. We granted the application.

**DISCUSSION**

**1.  The involuntary manslaughter conviction**

In this appeal, Tolen argues that "separate sentences for distribution of heroin and involuntary manslaughter are improper" because the act of distribution was the predicate unlawful act underlying the charge of involuntary manslaughter, and therefore, the required evidence test, first articulated in *Blockburger v. United States*, 284 U.S. 299

8

(1932)*,* mandates merger. The State argues that, because heroin distribution is a specific-intent crime and involuntary manslaughter is not, the elements of the two crimes are not the same and therefore, *Blockburger* does not apply.

The State also contends that Tolen's argument is premised on her unfounded assumption that her conviction of involuntary manslaughter was based on the "unlawful act" modality of that crime, rather than the "grossly negligent" variant. The State asserts that, if this Court were to find that Tolen was guilty of the gross negligence form of involuntary manslaughter, then her merger argument would collapse.

Our review of the record convinces us that Tolen was convicted of "unlawful act" involuntary manslaughter.

"Manslaughter is a common law offense and a felony in Maryland; it may be voluntary or involuntary, depending upon the requisite intent, and since the crime is not defined by statute, it is afforded its common law meaning in this State." *State v. Gibson*, 4 Md. App. 236, 241(1968), *aff'd*, 254 Md. 399 (1969). Only its penalty is established by statute. *See* CR § 2-207(a). Judge Charles E. Moylan, Jr., explains in his treatise CRIMINAL HOMICIDE LAW (2002):

> Manslaughter is a common law crime. It arrived in Maryland as part of the unlisted cargo on the *Ark* and *Dove*. No Act of the Maryland General Assembly ever established manslaughter as a crime or even presumed to define it.

*Id.*, § 8.1 at 151 (citing *Gibson v. State*, *supra*, 4 Md. App. at 241).

Commenting on "the essential pluralism of manslaughter," Judge Moylan points out: "Manslaughter is not a monolithic singularity but a family of closely-related criminal

9

situations." CRIMINAL HOMICIDE LAW § 8.4 at 154. Judge Moylan describes the kind of involuntary manslaughter that is based upon commission of an unlawful act as "the junior varsity manifestation of common law felony murder." *Id*., § 11.1 at 207. He notes that the label "unlawful act-manslaughter" is preferable to the terminology sometimes used in the past (*i.e*., "misdemeanor manslaughter"). *Id*. at 208.

As we noted above, the elements of unlawful act-manslaughter are set forth in MPJI-Cr 4:17.9B as requiring proof that the defendant either committed or attempted to commit or participated in one or more unlawful acts that killed a person. In *Johnson v. State*, 223 Md. App. 128, 157, *cert. denied*, 445 Md. 6 (2015), we stated that "we do not hesitate to conclude that the pattern instruction on unlawful act involuntary manslaughter accurately states Maryland law on this crime." Although Johnson had not properly preserved his argument that the pattern instruction was defective, we "note[d] for the benefit of the trial bench and bar that the pattern jury instruction on unlawful act involuntary manslaughter does not misstate the law." 223 Md. App. at 153 (citing *Schlossman v. State*, 105 Md. App. 277, 288, 659 A.2d 371 (1995), *cert. dismissed as improvidently granted*, 342 Md. 403, 676 A.2d 513 (1996), *overruled on other grounds by Bailey v. State*, 355 Md. 287, 734 A.2d 684 (1999)). *See also Ashe v. State*, 125 Md. App. 537, 547 (1999) ("In this case, appellant was charged with unlawful act involuntary manslaughter. Thus, by convicting him of that offense, the jury in the initial prosecution found that he had unintentionally caused the victim's death while engaged in an unlawful act.").

In this case, because the indictment provided minimal information regarding the manslaughter count, Tolen filed a demand for a bill of particulars, specifically requesting that the State provide particulars as to that charge. Tolen demanded that the State "state with particularity the precise time and location" the alleged manslaughter occurred, state "the precise facts the State contends support the accusation that [Tolen] committed the offense of manslaughter," and specify which "acts of [Tolen] are alleged to constitute manslaughter."

In response to Tolen's demand for particulars, the State first indicated that it would offer proof that Tolen actually, but unreasonably, believed she was acting in partial defense of Lantigua and sparing her from serious bodily harm by providing her heroin that would stave off painful symptoms of withdrawal; a successful invocation by Tolen of this partial defense would negate malice and mitigate what would otherwise be a murder down to voluntary manslaughter.

But the State also stated in its response to the demand for particulars: "In the alternative, **the State intends to prove Involuntary Manslaughter: Unlawful Act**. **The State will prove that the Defendant committed an unlawful act prohibited by statute (distribution of heroin) . . . that was dangerous to life.**" (Emphasis added.)  It cited and quoted extensively from *Gibson*, and repeatedly highlighted the word "unlawful." Although the excerpts quoted from *Gibson* included some references to the other varieties of involuntary manslaughter, there was nothing in the bill of particulars that withdrew or amended the affirmative statement that "the State intends to prove Involuntary Manslaughter: Unlawful Act."

11

When Tolen appeared in court to enter her plea, the State did not further clarify the legal basis of the involuntary manslaughter count. And no one reviewed on the record the elements of the crime of involuntary manslaughter as to which Tolen was pleading guilty. When the court announced its finding, the court said simply "you are guilty of involuntary manslaughter," without specifying the modality or the basis for the finding.

Thereafter, when defense counsel addressed the court regarding the appropriate sentence to be imposed, counsel stated: "[W]hat she's charged with is called involuntary manslaughter. It's defined as, as, you know, Your Honor, it is a death resulting from an unlawful act. The act being distribution [of heroin] in this case." Defense counsel reiterated that "the charge of manslaughter, which the definition is—an unlawful act, in this case the distribution causing the death of another." A third time, defense counsel noted:

> [I]n this context, . . . the manslaughter, the unlawful act here of manslaughter, which I believe is the appropriate one as opposed to a lawful act committed negligently, the unlawful act that is the element of the manslaughter in this case is the act of distribution. And therefore the, the only additional element for the manslaughter is, is the part that, that a death occurred.

Although the court rejected Tolen's merger argument, the court still did not explain that the finding of involuntary manslaughter was based on anything other than the fact that Tolen had committed an unlawful act—the distribution of heroin to Ms. Lantigua—that caused a death.

In Tolen's application for leave to appeal, she asserted, in support of her reasons for granting the application:

12

Applicant's guilty plea to involuntary manslaughter was tendered under, and supported by, facts amounting to an "unlawful act" theory. The only unlawful act proffered was the act of distributing "heroin" to the victim. Under these circumstances, the sentences for these offenses, the manslaughter and the unlawful act upon which the manslaughter charge was predicated, must merge.

The State's opposition to Tolen's application for leave to appeal did not raise any issue with respect to Tolen's assertion that her involuntary manslaughter plea and conviction were based upon the predicate that she had committed the unlawful act of heroin distribution. The State observed:

[Tolen] argues, as she did at sentencing, that the sentences should merge under either the required evidence test or the fundamental fairness doctrine. She correctly points out that the involuntary manslaughter conviction requires the commission of an unlawful act, and that act, here, was the distribution of heroin. But that does not compel merger under either theory, because the two crimes differ substantially as to both their elements (which matters under the required elements test) and their purpose (which matters under a fundamental fairness analysis).

After we granted Tolen's application for leave to appeal, Tolen filed a brief in which she argued: (1) there was insufficient evidence to support the involuntary manslaughter conviction; and (2) even if the evidence was sufficient to support that conviction, the distribution conviction should have merged into the manslaughter conviction for sentencing purposes. (Before oral argument, Tolen expressly abandoned the challenge to the sufficiency of the evidence.)

The State indicated in its brief that it is unclear whether the manslaughter conviction was for unlawful act-manslaughter. According to the State, even though the trial judge expressed no finding of gross negligence, the manslaughter conviction *could* have been based upon a finding of gross negligence. The State observed:

13

It is not clear from the record whether the trial court based the finding [of involuntary manslaughter] on an unlawful act or gross negligence. During the guilty plea hearing, the defense argued that the distribution of heroin was, if anything, involuntary manslaughter by commission of an unlawful act. When the trial judge announced his finding that Tolen was guilty of involuntary manslaughter and distribution of heroin, he did not articulate whether he believed Tolen to be guilty of the former under a theory that she committed an unlawful act or that she was grossly negligent. As the State explains, the facts as stated on the record supported a plea of guilty under either formulation.

Tolen looks to box the State in to an unlawful act theory of involuntary manslaughter. While that is how the State articulated its legal theory in a response to a demand for a bill of particulars, and likewise how Tolen framed the issue in the [application for leave to appeal], the State is not bound to establish her liability in only that way when the circuit court did not state one way or the other whether it found Tolen guilty under an unlawful act or gross negligence theory.[4]

---

[4] The definition of the crime of involuntary manslaughter based upon a grossly negligent act is stated as follows in MPJI-Cr 4:17.9A (brackets and parentheses in original):

**INVOLUNTARY MANSLAUGHTER--GROSSLY NEGLIGENT ACT**

The defendant is charged with the crime of involuntary manslaughter. In order to convict the defendant of involuntary manslaughter, the State must prove:

(1) that the defendant acted in a grossly negligent manner; and

(2) that this grossly negligent conduct caused the death of (name).

"Grossly negligent" means that the defendant, while aware of the risk, acted in a manner that created a high degree of risk to, and showed a reckless disregard for, human life.

[If defendant was unaware of the risk due to self-induced intoxication, that unawareness is not a defense.]

14

Tolen's reply brief asserted that the argument made in the State's brief in this Court was "the first time" in this case that the State had "propound[ed] a gross negligence theory of liability for involuntary manslaughter. The record makes clear, however, that Ms. Tolen pled guilty to unlawful act involuntary manslaughter, not gross negligence involuntary manslaughter." Citing *State v. Daughtry*, 419 Md. 35, 42 (2011), Tolen points out that "there is nothing in the record that establishes that Ms. Tolen was ever informed of the elements of gross negligence involuntary manslaughter." Referring to a case that had been recently decided by this Court—*Thomas v. State*, 237 Md. App. 527 (2018)—Tolen stated in her reply brief: "The facts of the instant case do not establish gross negligence any more than the facts in *Thomas* did."

After oral argument, when the Court of Appeals reversed our ruling in *Thomas* and held that the trial court in that case "did not err in convicting [the purveyor of the heroin that caused a user's death] of gross negligence involuntary manslaughter," the State asked permission, which we granted, for the parties to file supplemental briefs addressing the impact of *State v. Thomas*, 464 Md. 133 (2019).

But the procedural posture of the convictions in *Thomas* was quite different from what happened in Tolen's case. As a consequence, *Thomas* is inapposite because: (a) the trial court in that case made an express finding that Thomas was guilty of gross negligence involuntary manslaughter, *see* 464 Md. at 151; (b) the State did not challenge in the Court of Appeals our conclusion that there was insufficient evidence of causation to support Thomas's conviction of unlawful act-manslaughter, *id*.; (c) the Court of Appeals expressly stated in *Thomas*: "[T]his case is about gross negligence involuntary

15

manslaughter, not unlawful act involuntary manslaughter." *Id*. at 173 n.20; and (d) the Court of Appeals declined to address merger in *Thomas*, *see id.* at 180 n.23.

Although the State continues to argue—with renewed vigor in light of its recent victory in *Thomas* in the Court of Appeals—that it might have been possible to find Tolen guilty of gross negligence involuntary manslaughter, we conclude that the argument comes too late in this case, having been first raised well after the trial court accepted Tolen's guilty plea and entered judgment against her based upon that plea. We see nothing in the indictment or the State's answer to the demand for particulars that would have put Tolen on notice that the State intended to attempt to prove that she was guilty of gross negligence involuntary manslaughter. On the contrary, the State's answer stated explicitly and without contradiction that "the State intends to prove Involuntary Manslaughter: Unlawful Act. The State will prove that the Defendant committed an unlawful act prohibited by statute (distribution of heroin) . . . ." And the State said nothing at the plea hearing that would have alerted Tolen that there had been a change in the State's theory of the case.

Under the circumstances, the State should have known that Tolen's plea of guilty to involuntary manslaughter was based upon the theory that she had committed the unlawful act of distributing the heroin that caused the death of Ms. Lantigua. *Cf. Ray v. State*, 454 Md. 563, 579 (2017) (when terms of a plea agreement are clear and unambiguous, it is unnecessary to look elsewhere; but, if a disputed provision is ambiguous, we seek "to determine what a defendant reasonably understood at the time of [entering the] plea"). Despite the State's belated contention that the facts of this case

conceivably could have supported a conviction of gross negligence involuntary manslaughter, we are convinced that the crime to which Tolen pled guilty was unlawful-act involuntary manslaughter. Our merger analysis is therefore limited to whether a conviction for the underlying unlawful act merges, for sentencing purposes, into a conviction of unlawful-act involuntary manslaughter.

## 2. Merger

The question of whether separate punishments may be imposed for multiple convictions requires consideration of the prohibition against double jeopardy. "The Fifth Amendment guarantee against double jeopardy prohibits both successive prosecutions for the same offense as well as multiple punishment[s] for the same offense." *Newton v. State*, 280 Md. 260, 263 (1977). The Court of Appeals explained in *Brooks v. State*, 439 Md. 698, 737 (2014):

> Merger protects a convicted defendant from multiple punishments for the same offense. [Citing *Nicolas v. State*, 426 Md. 385, 400 (2012).] Sentences for two convictions must be merged when: (1) the convictions are based on the same act or acts, and (2) under the required evidence test, the two offenses are deemed to be the same, or one offense is deemed to be the lesser included offense of the other. *Id*. at 400–02, 44 A.3d 396; *State v. Lancaster*, 332 Md. 385, 391, 631 A.2d 453 (1993).

The principal test for determining whether offenses stemming from the same transaction must merge for sentencing purposes is the "required evidence" test. Under the required evidence test, "'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *Thomas v. State*, 277 Md. 257, 265 (1976) (quoting *Blockburger*, 284 U.S. at

17

304). *Accord Anderson v. State*, 385 Md. 123, 131 (2005); *Pair v. State*, 202 Md. App. 617, 636-37 (2011).

In *State v. Johnson*, 442 Md. 211, 218 (2015), the Court of Appeals described the required evidence test by quoting the following passage from *Nicolas v. State*, 426 Md. 385, 401-02 (2012):

> The required evidence test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter. Stated another way, the required evidence is that which is minimally necessary to secure a conviction for each offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts[,] merger follows.

(Citations and ellipses omitted in *Johnson*.)

Tolen's main argument in the trial court, as well as in this Court, is that the two convictions that were entered as a result of her guilty plea must merge for sentencing under the required evidence test because unlawful act-manslaughter required proof of all of the elements of the specified unlawful act plus death caused by that act.

The State replies that Tolen's argument is based upon a misapprehension regarding the required evidence test. The State asserts:

> Involuntary manslaughter is an unintentional act. [*State v.*] *Albrecht*, 336 Md. [475,] at 499 [(1994)]. Distribution, on the other hand, is intentional: "In committing the crime of distribution, the intent to distribute is implied in the transfer from one person to another." *Hankins v. State*, 80 Md. App. 647, 659 (1989). Because distribution requires intent, and

18

involuntary manslaughter does not, the trial court appropriately declined to merge Tolen's sentences.

\* \* \*

. . . [E]ven under an unlawful act formulation, involuntary manslaughter does not require or subsume the intent element of distribution—indeed, it specifically excludes it by requiring an unintentional killing. Accordingly, the elements do not satisfy the required evidence test, and the convictions do not merge.

In our view, this argument misconstrues the intent requirement for unlawful act-manslaughter. Although the State is correct that intent to kill is not an element of involuntary manslaughter, this variant of manslaughter requires the same intent as is required for the predicate unlawful act, namely, the intent to perpetrate that unlawful act. Judge Moylan explains in CRIMINAL HOMICIDE LAW § 11.1 at 207 that unlawful act-manslaughter

is the junior varsity manifestation of common law felony murder. In establishing criminal responsibility for an unintended homicide, its rationale parallels that of the felony murder doctrine in every regard. Under both doctrines, the harm being redressed is a homicide; the causative *actus reus* was the perpetration or attempted perpetration of a crime; the *mens rea* was the intent to perpetrate that crime.

Noting that the rationale for this variety of involuntary manslaughter "parallels that of the felony murder doctrine in every regard" *id.*, we fail to see why the required evidence test would not be applied to convictions for unlawful act-manslaughter and an underlying unlawful act in a manner analogous to the way the test applies to felony murder and an underlying felony. In *Johnson, supra*, 442 Md. at 220, the Court of Appeals stated that it had previously held (in *Newton v. State*, 280 Md. 260, 265 (1977)): "Applying the required evidence test, it would seem clear that the felony murder and the

19

underlying felony must be deemed the same for double jeopardy purposes." The Court of Appeals in *Johnson*, 442 Md. at 220, quoted with approval this explanation from *Newton*, 280 Md. at 269, as to why the conviction for the underlying felony merges into a conviction of felony murder:

> Therefore, to secure a conviction for first degree murder under the felony murder doctrine, the State is required to prove the underlying felony and the death occurring in the perpetration of the felony. **The felony is an essential ingredient of the murder conviction. The only additional fact necessary to secure the first degree murder conviction, which is not necessary to secure a conviction for the underlying felony, is proof of the death. The evidence required to secure a first degree murder conviction is, absent the proof of death, the same evidence required to establish the underlying felony.** Therefore, as only one offense requires proof of a fact which the other does not, under the required evidence test the underlying felony and the murder merge.

(Emphasis added.)

In *Newton*, a dissenting opinion had argued that the Court seemed to be applying an "actual evidence" test, rather than examining "the evidence required to establish the elements of each offense" in accordance with the required evidence test. 280 Md. at 271, 275-81. But the majority rejected that argument, and held that proof of the underlying felony was one of the required elements of felony murder, stating:

> [P]roof of the underlying felony is itself an essential element of first degree murder under the felony murder doctrine. . . . The underlying felony is one of two alternative elements of the crime. It is not merely evidence creating a rebuttable presumption that wilfulness, deliberation and premeditation were present. Once the State proves a killing during an enumerated felony, the offense of first degree murder is necessarily established, regardless of any evidence relative to wilfulness, deliberation and premeditation.

*Id*. at 272.

20

In *Johnson*, the Court of Appeals reaffirmed the *Newton* Court's conclusion that, under the required evidence test, the underlying felony merges for sentencing purposes into a felony murder conviction. 442 Md. at 223. The Court further concluded that only one underlying felony merges regardless of how many underlying felony convictions could have supported the conviction of felony murder, stating: "In sum, once the conviction for one predicate felony merges, application of the required evidence test does not result in further merger of convictions for other predicate felonies." 442 Md. at 222-23 (footnote omitted). And the *Johnson* Court concluded that, where there are multiple underlying felonies, "in the absence of an unambiguous designation by the trier of fact, the predicate felony with the greatest maximum sentence merges for sentencing purposes with the felony murder conviction, and the defendant may be separately sentenced for any remaining predicate felonies." *Id*. at 224-25 (footnote omitted). *Accord Twigg v. State*, 447 Md. 1, 17-19 (2016).

When merger is required under the required evidence test, the crime with fewer elements merges into the crime with more elements, regardless of the maximum penalties applicable to the two offenses. *Dixon v. State*, 364 Md. 209, 238 (2001) ("'[w]here there is a merger of a lesser included offense into a greater offense, we are not concerned with penalties—the lesser included offense generally merges into and is subsumed by the greater offense regardless of penalties.' *Spitzinger v. State*, 340 Md. 114, 125, 665 A.2d 685, 690 (1995)."); *State v. Lancaster*, 332 Md. 385, 404 (1993) ("where there is merger

21

based on the required evidence test, the included offense merges into the offense with the distinct element, regardless of the maximum sentence which each offense carries").[5]

We conclude that the same merger analysis that applied in *Johnson* and *Newton* should apply when a defendant has been convicted of unlawful act-manslaughter. The State was required to prove two elements: the underlying unlawful act and the fact that it caused a death. As in *Johnson* and *Newton*, the underlying unlawful act was a required element of the unlawful act-manslaughter conviction. As a consequence, the conviction for distribution of heroin merged into the conviction of involuntary manslaughter for sentencing purposes, and no separate sentence could be imposed on the conviction of distribution of heroin.

Because an illegal sentence can be corrected at any time pursuant to Maryland Rule 4-345(a), we shall vacate the sentence that was imposed relative to the conviction of distribution of heroin.

---

[5] We note that, although some other states follow the same rule that was adopted in *Lancaster*, holding that the offense with fewer elements merges into the offense with more elements irrespective of which offense is punishable by a greater maximum penalty, other jurisdictions have followed a rule that permits merger of the offense with the lesser maximum penalty into the offense with the greater maximum penalty. *See, e.g., United States v. Peel*, 595 F.3d 763, 767-68 (7th Cir. 2010) ("The remedy is to eliminate the doubleness. But which conviction must be vacated is not dictated by the Constitution. It is a matter committed to the trial judge's discretion because functionally it is a decision concerning the length of the defendant's sentence"); *Commonwealth v. Johnson*, 75 Mass. App. Ct. 903, 905 (2009) ("It may be that, because the Legislature has permitted a maximum sentence [for the lesser included offense] greater than that allowed [for the offense with more elements], the former should be regarded as the more serious offense. . . . We think it more appropriate to leave the matter to the trial judge, . . ."); *Commonwealth v. Everett*, 550 Pa. 312, 315-16 (1993) ("the merger doctrine requires that only one sentence may be imposed, but it has nothing to say about which sentence that should be").

**SENTENCE AS TO DISTRIBUTION OF HEROIN VACATED; OTHERWISE, ALL JUDGMENTS OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED. COSTS TO BE PAID BY WASHINGTON COUNTY.**